[Crim. No. 12118. Third Dist., Sept. 27, 1983.]

THE PEOPLE, Plaintiff and Respondent, v.
JOHN WILLIAM DELETTO, Defendant and Appellant.

460

**COUNSEL**

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, Lisa Short and Gregory J. Roussere, Deputy State Public Defenders, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Daniel J. Kremer, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, James T. McNally and Ruth M. Saavedra, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**SIMS, J.—**

### FACTUAL AND PROCEDURAL BACKGROUND

On July 30, 1981, an information was filed in Shasta County Superior Court charging defendant with committing a lewd or lascivious act upon a child (Pen. Code, § 288) as alleged in count I, oral copulation with a person under 14 years of age and 10 years younger than he (Pen. Code, § 288a, subd. (c)) as alleged in count II, sodomy with a person under 14 years of age and 10 years younger than he (Pen. Code, § 286, subd. (c)) as alleged

in count III, and unlawful sexual intercourse (Pen. Code, § 261.5) as alleged in count IV. The information further alleged that each act was committed "on or about the 1st day of June to the 30th day of August, 1980."

Trial by jury began March 25, 1982. We discuss the evidence in some detail in the course of this opinion. At this point, suffice it to say that during the months of June through August of 1980 defendant lived in a residence in Shingletown, California, with his six-year-old daughter (the victim), his ex-wife Barbara Lee Chase, his parents Arthur and Louise Thompson, and his friend and ex-wife's current husband, Wayne Chase.

Defendant's daughter, who was eight years old at the time of trial, testified that defendant committed acts of sexual intercourse and sodomy as charged in the information. She also testified that defendant committed two separate and distinct acts of oral copulation with her, although the information alleged only a single act.

The court allowed two foster mothers, who had custody of the minor after the summer of 1980, to testify as to certain deviant behavior of the minor.

Defendant's defense was that he did not engage in any sexual conduct with the minor; that Wayne Chase, a previously convicted sex offender, had committed the acts in question; and that the minor's foster mothers had participated in fabricating the minor's testimony in order to get custody of her.

The trial court did not give an instruction, such as CALJIC No. 17.01, requiring the jury to agree unanimously that defendant had committed the same act in order to convict. The trial court gave CALJIC No. 4.71, allowing the jury to convict if it found a crime was committed "on or about" a certain date.

Following instructions, the jury repaired to the jury room, deliberated for 25 minutes, and returned to the courtroom with verdicts finding defendant guilty on all counts.

Defendant was sentenced to twelve years and four months in state prison.

On appeal defendant contends that (1) his conviction for oral copulation must be reversed because (a) the trial court failed to instruct, sua sponte, with CALJIC No. 17.01, and (b) the trial court erroneously instructed the jury with CALJIC No. 4.71 rather than with CALJIC No. 4.71.5 or its equivalent; (2) his conviction for lewd and lascivious conduct is multiply defective and must be reversed, the Attorney General has so conceded; (3)

the trial court erred in admitting evidence of the victim's behavior following the alleged offenses; (4) the case must be remanded in order for the trial court to state reasons for its sentencing choices, the Attorney General has so conceded; and (5) the trial court erroneously calculated defendant's presentence custody credit.

We conclude the failure to give CALJIC No. 17.01 and the giving of CALJIC No. 4.71 was error but that the error is harmless beyond a reasonable doubt. We further hold the trial court did not err in admitting evidence of the victim's deviant conduct. Finally we agree with the Attorney General that the conviction on count I for lewd and lascivious conduct must be reversed. Accordingly, we reverse count I, affirm counts II, III and IV, and remand to the trial court for resentencing.

## DISCUSSION

## I

■ Defendant first contends his conviction on count II for oral copulation (Pen. Code, § 288a, subd. (c)) must be reversed because the trial court failed to instruct the jury, sua sponte, with CALJIC No. 17.01[1] to the effect that they must all agree on which of the two acts of oral copulation testified to by the minor forms the basis for the conviction. Defendant also contends the trial court erred in giving CALJIC No. 4.71,[2] instructing the jury it is not necessary to show the crime was committed on a specific date, rather than CALJIC No. 4.71.5,[3] which requires jury unanimity as to a specific act. The People acknowledge that the failure to give CALJIC No.

---

[1]CALJIC No. 17.01 (4th ed. 1979) provides: "The defendant is charged with the offense of _____. He may be found guilty if the proof shows beyond a reasonable doubt that he committed any one or more of such acts, but in order to find the defendant guilty, all the jurors must agree that he committed the same act or acts. It is not necessary that the particular act or acts committed so agreed upon be stated in the verdict."

[2]CALJIC No. 4.71 (4th ed. 1979) as read states: "When, as in this case, it is alleged that the crime charged was committed 'on or about' a certain date, if the jury finds that the crime was committed it is not necessary that the proof show that it was committed on that precise date; it is sufficient if the proof shows that the crime was committed on or about that date."

[3]CALJIC No. 4.71.5 (4th ed. 1982 pocket pt.) provides: "Defendant is charged in [Count _____of] the information with the commission of the crime of _____, a violation of section _____of the Penal Code, on or about a period of time between _____ and _____. [¶] In order to find the defendant guilty, it is necessary for the prosecution to prove beyond a reasonable doubt the commission of a specific act [or acts] constituting said crime within the period alleged. [¶] And, in order to find the defendant guilty, you must unanimously agree upon the commission of the same specific act [or acts] constituting said crime within the period alleged. [¶] It is not necessary that the particular act or acts committed so agreed upon be stated in the verdict."

17.01 was error.[4] (*People* v. *Diedrich* (1982) 31 Cal.3d 263, 281 [182 Cal.Rptr. 354, 643 P.2d 971]; *People* v. *Williams* (1901) 133 Cal. 165, 168 [65 P. 323]; *People* v. *Castro* (1901) 133 Cal. 11, 12-13 [65 P. 13]; *People* v. *McNeill* (1980) 112 Cal.App.3d 330, 336 [169 Cal.Rptr. 313]; *People* v. *Alva* (1979) 90 Cal.App.3d 418, 426 [153 Cal.Rptr. 644].) Although not specifically conceded by the People, it was also error to give CALJIC No. 4.71, rather than CALJIC No. 4.71.5, in the circumstances of this case. (*People* v. *Gavin* (1971) 21 Cal.App.3d 408, 417-418 [98 Cal.Rptr. 518]; see *People* v. *Barney* (1983) 143 Cal.App.3d 490, 497 [192 Cal.Rptr. 172].) However, the People contend the instructional error was not prejudicial and does not require reversal. We agree.

## A

We address first the failure to give CALJIC No. 17.01. There is no question but that the minor described two separate acts of oral copulation. The minor testified that (1) defendant made oral contact with her genital area, and (2) defendant placed his penis in her mouth and ejaculated. Both acts occurred during the summer of 1980 at the Shingletown residence; no further specificity as to time appears on the record.

The starting point for our analysis is *People* v. *Diedrich, supra,* 31 Cal.3d 263. There, a former member of the Orange County Board of Supervisors was convicted of bribery. (Pen. Code, § 165.) Count I of the information charged defendant with violation of Penal Code section 165 during the period January to April 1973. At trial, the People put on evidence of two separate instances of bribery that occurred during the applicable period of time. On one occasion, defendant and his personal friend and campaign finance chairman, one Rose, met with land developers at the Jolly Fox restaurant. Evidence suggested that, at the restaurant meeting, defendant offered to help the land developers remove a parcel from an agricultural preserve if the developers were willing to purchase a parcel of raw land, owned by Rose, for $150,000 over market price. Other evidence suggested that, during the same three-month period of time, defendant's personal attorney, one Remington, was hired by the developers for a substantial fee never justified by services actually rendered by the attorney.

At trial, defendant requested an instruction informing the jury that they must unanimously agree upon at least one particular act in order to convict

[4]The jury was instructed with CALJIC No. 17.50 (4th ed. 1979), requiring in relevant part that "[i]n order to reach a verdict, all twelve jurors must agree to the decision . . . ." While we may infer that all twelve jurors agreed that defendant committed *some* act of oral copulation, we cannot assume, without an examination of the evidence, that the jury must have agreed upon the same act or acts. (See *People* v. *Crawford* (1982) 131 Cal.App.3d 591, 595 [182 Cal.Rptr. 536].)

on count I, and the instruction was refused. The Supreme Court held that the refusal of the proffered instruction, or the failure to give CALJIC No. 17.01, constituted error. (*People* v. *Diedrich, supra,* 31 Cal.3d at p. 282.) The court then addressed the possible prejudicial effect of the omission in instructions as follows: "The next question is whether the error was prejudicial. We feel bound to hold that it was. *This is not a case where the jury's verdict implies that it did not believe the only defense offered.* Diedrich's defenses differed: As far as the Jolly Fox offer is concerned, it consisted of a simple denial. The Remington transactions were 'explained.' Having in mind that the proof of the Jolly Fox offer depended, essentially, on the testimony of a single immunized witness and that the proof of bribery via the Remington transaction was somewhat circumstantial, we feel bound to conclude that the error was prejudicial." (*Id.,* at pp. 282-283, italics added.)

We view the instant case as one falling within the exception noted in dictum in *Diedrich,* to wit, one in which the jury's verdict implies that it did not believe the only defense offered. We can discover nothing in the instant record by way of evidence or argument by which the jury could have found that defendant committed one act of oral copulation but not the other.

Preliminarily, we turn to the prosecution's evidence. This is not a case in which different witnesses testified as to one incident but not the other or where different items of real evidence were introduced to prove one act but not the other, so that the jury might have distinguished between the credibility of different witnesses or the weight to be given various items of real evidence. (Compare *People* v. *Ferguson* (1982) 129 Cal.App.3d 1014, 1021 [181 Cal.Rptr. 593] [failure to give CALJIC No. 17.01 held reversible error where defendant was charged with and convicted of one count of check fraud (Pen. Code, § 476a) and the evidence showed 35 separate bad checks with different victims]; *People* v. *Hefner* (1981) 127 Cal.App.3d 88, 96-97 [179 Cal.Rptr. 336] [conviction on two counts of lewd and lascivious acts with a minor (Pen. Code, § 288), one count of oral copulation (Pen. Code, § 288a) and one count of child molesting (Pen. Code, § 647a) reversed for failure to give CALJIC No. 17.01 where two minor victims testified and gave "somewhat confusing testimony" as to dates, times and sequences].) In the instant case, only one witness, the minor, testified about the acts in question; no real evidence was admitted.

Nor is this a case in which the recollection of any prosecution witness is better with respect to one incident than the other. On cross-examination, defense counsel elicited testimony from the minor indicating she couldn't remember when she moved from Shingletown or whether she still lived there, nor could she remember when she first told anybody about "what

went on between you and your John." While this testimony tended to show that the minor's recollection of events was flawed, the testimony gave the jury no basis upon which to discriminate between the two incidents.

Nor did other testimony of the minor, provided during cross-examination, focus on the two acts of oral copulation. Thus, on cross-examination the minor testified that "Uncle Don" (Wayne Chase) had had intercourse with her. She also said that her foster mother had told her what had happened to her in Shingletown. In sum, although defense counsel elicited testimony tending to show that someone other than defendant had committed the acts in question, and that the minor's foster mother had at least coached the minor about what to say, cross-examination of the minor provided no basis upon which the jury could have distinguished between the two acts of oral copulation.

The minor's 10-year-old brother testified that, on one occasion, he saw defendant "on top of" the minor. While that testimony could conceivably be construed as describing an act of oral copulation, that remote likelihood is dispelled by the brother's uncontradicted testimony that both the minor and defendant had their underpants on when defendant was "on top of" the minor. The brother's testimony may not be construed as describing an act of oral copulation.

Finally, while other prosecution witnesses testified to the commission of deviant acts by the minor after she was placed in foster homes (discussed in part III, *post*), that testimony gave the jury no basis upon which to conclude that one act of oral copulation had been committed while another had not.

The defense similarly provided the jury with no evidence that focused on one act but not the other. The defendant testified that "I have never, in no way . . . shape or form ever committed an un . . . natural act." Defendant also testified that he was being framed by the welfare department and the detective bureau. Defendant said that the minor's foster mothers "put [the minor's testimony] in her head so they could adopt my, you know, kids out." Barbara Chase and defendant's parents testified that they were never aware of any sexual conduct between the minor and defendant. Finally, the defense called Wayne Chase to the stand for the purpose of eliciting testimony that he had lived in the house during the period in question and had previously been twice convicted of child molesting in violation of Penal Code section 288.

Thus, defendant's defense was that (a) he didn't do anything; (b) foster mothers encouraged the minor to give false testimony as to all offenses to

enable the foster mothers to adopt the minor; and (c) if anyone participated in sexual conduct with the minor, it was Wayne Chase, not defendant. Accordingly, in closing argument, defense counsel argued, "I'm not trying to tell you that there isn't something wrong with [the minor]. I'm not trying to tell you that something didn't happen to her. That is not the point of this discussion. The point is whether they have proven that John Deletto, her husband—her father, pardon me, her father had something to do with it." Defense counsel continued to discuss the motive, opportunity, and background of Wayne Chase and concluded that "Wayne Chase is very likely responsible."

Consequently, neither defense evidence nor defense argument suggested even remotely to the jury that they could somehow distinguish between the two acts of oral copulation testified to by the minor. (Compare *People* v. *Epps* (1981) 122 Cal.App.3d 691, 695 [176 Cal.Rptr. 332] [failure to give CALJIC No. 17.01 required reversal where defendant, convicted of one count of child molesting (Pen. Code, § 647a), had various explanations for different acts of alleged molestation]; *People* v. *Alva, supra,* 90 Cal.App.3d at pp. 421-423 [defendant charged with one count of incest (Pen. Code, § 285) and the minor testified to acts of intercourse regularly between February and July and the minor's brother, who provided defense testimony, moved into the house in May].)

The state of the evidence therefore compels the conclusion that "the jury's verdict implies that it did not believe the only defense offered." (*People* v. *Diedrich, supra,* 31 Cal.2d at p. 283.)

Relying on *People* v. *Espinoza* (1983) 140 Cal.App.3d 564 [189 Cal.Rptr. 543], defendant contends that his conviction here must be reversed because the minor did not describe two *identical* acts of oral copulation. In *Espinoza,* the appellant and two accomplices robbed employees of a market. Appellant was convicted, inter alia, of assault with a deadly weapon. (Pen. Code, § 245, subd. (a).) The evidence showed that appellant, who was carrying a rifle, approached two employees and made them turn toward a wall. As one of the employees started to turn his head, the accomplice said, "Don't move," and fired the shotgun into the ceiling. The prosecutor argued that Espinoza could be convicted of assault with a deadly weapon based upon his use of a knife or his companion's use of a rifle.[5]

Concluding that the failure to give CALJIC No. 17.01 constituted prejudicial error, the court remarked: "Otherwise stated, while we can con-

---

[5]The opinion does not indicate the theory of appellant's vicarious responsibility, i.e., aiding and abetting or conspiracy or whatever.

fidently conclude that all jurors agreed on the acts which were *committed,* we can only guess as to how the acts were *characterized* when the jurors applied the law to the facts. This is not a case such as *People* v. *Martinez* (1922) 57 Cal.App. 771, 774 [208 P. 170], involving several uncontradicted acts of sexual intercourse in a statutory rape prosecution. Because the physical acts were identical, it was inconceivable that the jury would have disagreed as to which could form a basis for conviction. In the instant case, the physical acts involving the knife were not identical to those with the gun and we simply cannot conclude the jurors necessarily classified them the same." (*People* v. *Espinoza, supra,* 140 Cal.App.3d at p. 569, italics in original; see also *People* v. *Crawford, supra,* 131 Cal.App.3d at p. 598 [failure to give CALJIC No. 17.01 in prosecution for possession of firearm by an ex-felon (Pen. Code, § 12021) held error where the evidence showed a seizure of four handguns, two from defendant's bedroom and two from the bedroom of another occupant of the house, so that "the relevant indicia of possession" were different].)

In the instant case, it is undisputed that the two acts of oral copulation testified to by the minor were not identical, in part because no two sexual acts separated by time are identical. However, the significant question, posed by *Espinoza,* is whether the jury could have characterized the acts differently under the law. Here, the minor testified that, on one occasion, defendant "french kissed" her vagina with his tongue and, on another occasion, defendant placed his penis in her mouth and ejaculated. ■ ■ ■ ■ The jury was instructed with CALJIC No. 10.40, which provided in relevant part that, "Any person who participates in an act of oral copulation with another person who is under 18 years of age, is guilty of the crime of oral copulation. [¶] Oral copulation consists of joining or connecting the mouth of one person on or with the sexual organ of another person."[6] ■ ■ Under this instruction, each of the acts described by the minor, while different, clearly constituted an act of unlawful oral copulation. (See *People* v. *Tribble* (1971) 4 Cal.3d 826, 829 [94 Cal.Rptr. 613, 484 P.2d 589] [woman victim orally copulated male defendant]; *People* v. *Wilson, supra,* 20 Cal.App.3d at p. 510 [defendant orally copulated minor by kissing vaginal area].) Here, unlike *Espinoza,* neither the facts nor the law gave the jury a basis upon which to characterize the two acts of oral copulation differently. This is, indeed, a case in which the jury must have agreed that defendant committed both unlawful acts of oral copulation. (See

---

[6]The instruction correctly reflects the law that penetration is not necessary to commit the crime defined by Penal Code section 288a. (See, e.g., *People* v. *Minor* (1980) 104 Cal.App.3d 194, 197 [163 Cal.Rptr. 501]; *People* v. *Wilson* (1971) 20 Cal.App.3d 507, 510 [97 Cal.Rptr. 774]; *People* v. *Hunter* (1958) 158 Cal.App.2d 500, 505 [322 P.2d 942]; *People* v. *Harris* (1951) 108 Cal.App.2d 84, 88 [238 P.2d 158]; see also *People* v. *Cline* (1969) 2 Cal.App.3d 989, 992-993, fn. 2 [83 Cal.Rptr. 246].)

*People* v. *McIntyre* (1981) 115 Cal.App.3d 899, 910-911 [176 Cal.Rptr. 3]; cf. *People* v. *Gonzalez* (1983) 141 Cal.App.3d 786, 791-792 [190 Cal.Rptr. 554].)

■ We next address the standard by which we are to determine whether the failure to give CALJIC No. 17.01 can be harmless error.

We are not the first court to conclude that the failure to give CALJIC No. 17.01 (or equivalent) constitutes harmless error, although we acknowledge that the circumstances of this case are different from those in which the same conclusion has been reached. For example, the failure to give an instruction such as the one at issue here was held harmless error in *People* v. *Martinez* (1922) 57 Cal.App. 771 [208 P. 170]. There, defendant was charged in one count with what is now unlawful sexual intercourse and the victim testified that she had intercourse with the defendant on three separate nights. The court held that the failure to give an instruction requiring the jury unanimously to agree on a single act was not prejudicial error because, inter alia, "there is nothing in the case that could possibly make her testimony as to one of these acts more or less probable than her testimony respecting the others." (*Id.,* at p. 774.) However, as defendant points out, the defendant in *Martinez* had confessed to the acts of intercourse and did not deny them at trial. Consequently, the failure to give an instruction requiring unanimous agreement as to any particular act was obviously harmless error.

In *People* v. *McIntyre, supra,* 115 Cal.App.3d 899, defendant was charged with a single count of oral copulation and testimony at trial indicated two separate acts of oral copulation took place within a matter of minutes. The court held alternatively that failure to give CALJIC No. 17.01 was not error because the two acts formed part of one transaction or, if it was error to fail to give the instruction, the error was not prejudicial "in light of the fundamental credibility determination involved in the victim's testimony as to the nature of the April 30 events versus the defendant's testimony he was not there at all on that night . . . ." (*Id.,* at p. 911.) We note that *McIntyre* was cited with approval in *People* v. *Diedrich, supra,* 31 Cal.3d at page 282.

In determining whether the failure to give CALJIC No. 17.01 constituted harmless error, *McIntyre* used the test for harmless error announced in *People* v. *Watson* (1956) 46 Cal.2d 818, at page 836 [299 P.2d 243], i.e., whether "it is reasonably probable that a result more favorable to the ap-

pealing party would have been reached in the absence of the error."[7] (See *People* v. *McIntyre, supra,* 115 Cal.App.3d at p. 911.) We conclude however, that the appropriate test by which a failure to give CALJIC No. 17.01 should be measured is that set forth in *Chapman* v. *California* (1967) 386 U.S. 18, at page 24 [17 L.Ed.2d 705, 710-711, 87 S.Ct. 824, 24 A.L.R.3d 1065], i.e., whether the error was harmless beyond a reasonable doubt. In order to explain our conclusion, we return again to *People* v. *Diedrich, supra,* 31 Cal.3d 263.

*Diedrich* cited *People* v. *Alva, supra,* 90 Cal.App.3d 418, as the appropriate case in which to locate "reasons for requiring jury unanimity on at least one particular crime shown by the evidence" which were "too obvious to require another restatement." (*Diedrich, supra,* at p. 281.) *Alva,* in turn, discusses *People* v. *Castro, supra,* 133 Cal. 11, and *People* v. *Williams, supra,* 133 Cal. 165, at some length. (See *People* v. *Alva, supra,* 90 Cal.App.3d at pp. 424-425.)

Our review of *Castro, Williams,* and *Alva,* discloses more than one reason supporting the requirement that, where the accusatory pleading charges a single act and the evidence shows more than one unlawful act, and where the prosecution fails to elect an act constituting the offense,[8] and where the jury is not instructed to select the offense as to which evidence is first introduced, then the jury must be instructed that they must unanimously agree beyond a reasonable doubt that defendant committed some specific criminal act. (See *People* v. *Alva, supra,* 90 Cal.App.3d at pp. 424-425.)

The first reason is that the instruction requires a unanimous verdict; without the instruction some jurors could believe defendant committed one act and some jurors could conclude he committed another. (See *People* v. *Williams, supra,* 133 Cal. at p. 168; *People* v. *McNeill, supra,* 112 Cal.App.3d at pp. 335-336; *People* v. *Alva, supra,* 90 Cal.App.3d at p. 425.)

A second reason for requiring the giving of CALJIC No. 17.01 is the instruction insures not only that the members of the jury all agree that defendant committed an act but also that they do so beyond a reasonable

---

[7] The *Watson* test was based on then article VI, section 4½ of the California Constitution. (*People* v. *Watson, supra,* 46 Cal.2d at p. 832.) The current applicable provision of the California Constitution (identical in content to former art. VI, § 4½) is article VI, section 13 which provides: "No judgment shall be set aside, or new trial granted, in any cause, on the ground of *misdirection of the jury,* or of the improper admission or rejection of evidence, or for any error as to any matter of pleading, or for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a *miscarriage of justice.*" (Italics added.)

[8] See footnote 10, *post.*

doubt. (See fn. 1, *ante.*) Thus, in *Williams,* the trial court gave an instruction allowing the jury to find defendant guilty if they found he had engaged in sexual intercourse with the prosecutrix at any time within three years before the filing of the indictment. Holding the instruction error, the court said, "A verdict of guilty could have been rendered under such an instruction, *although no two jurors were convinced beyond a reasonable doubt,* or at all, *of the truth of the charge, as to any one of these separate offenses.*" (*People* v. *Williams, supra,* 133 Cal. at p. 168, italics added.) By providing that a defendant "may be found guilty if the proof shows beyond a reasonable doubt that he committed any one or more of such acts, but . . . the jurors must agree that he committed the same act or acts," CALJIC No. 17.01 focuses the jury's attention on a specific act and requires the jury to determine guilt as to that act beyond a reasonable doubt. The instruction is designed in part to prevent the jury from amalgamating evidence of multiple offenses, no one of which has been proved beyond a reasonable doubt, in order to conclude beyond a reasonable doubt that a defendant must have done *something* sufficient to convict on one count.

"Since principles of due process protect the accused against conviction except upon proof beyond a reasonable doubt (*In re Winship* (1970) 397 U.S. 358 [25 L.Ed.2d 368, 90 S.Ct. 1068]), an instruction to the jury which has the effect of reversing or lightening the burden of proof constitutes an infringement on the defendant's constitutional right to due process. (*People* v. *Serrato* (1973) 9 Cal.3d 753, 766-767 [109 Cal.Rptr. 65, 512 P.2d 289]; *People* v. *Hardy* (1948) 33 Cal.2d 52, 66 [198 P.2d 865]; *Smith* v. *Smith* (5th Cir. 1971) 454 F.2d 572, 578.)" (*People* v. *Saddler* (1979) 24 Cal.3d 671, 679-680 [156 Cal.Rptr. 871, 597 P.2d 130].) An error in instruction which significantly misstates the requirement that proof of guilt be beyond a reasonable doubt "compels reversal unless the reviewing court is 'able to declare a belief that it was harmless beyond a reasonable doubt.' (*Chapman* v. *California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710-711, 87 S.Ct. 824, 24 A.L.R.3d 1065].)" (*People* v. *Serrato* (1973) 9 Cal.3d 753, at p. 767 [109 Cal.Rptr. 65, 512 P.2d 289].)[9]

---

[9]We note that in *People* v. *Brigham* (1979) 25 Cal.3d 283, at page 292 [157 Cal.Rptr. 905, 599 P.2d 100], the court employed the test of error set forth in *People* v. *Watson, supra,* 46 Cal.2d 818, to determine whether an erroneous reasonable doubt instruction required reversal. As noted, that test asks whether it is "reasonably probable" that a different result would have been obtained in the absence of the error. (*Id.*) In *Brigham,* the trial court had given former CALJIC No. 22 (rev.) together with standard CALJIC No. 2.90. Although the Supreme Court found inconsistencies between the two instructions, it applied the test of *Watson* and concluded the error was harmless in light of the evidence. We view *Brigham* as a case in which the burden of proof instruction was not substantially misstated. The jury was informed by CALJIC No. 2.90 that it had to find defendant guilty of the offense charged beyond a reasonable doubt; defendant's quarrel was with language in former CALJIC No. 22 (rev.) defining reasonable doubt in greater detail. In *Serrato,* the trial court also gave "the customary instruction that a defendant is presumed innocent." (*People* v. *Serrato,*

██ We conclude to a certainty that, in the peculiar circumstances of this case, the result would have been the same had the jury been instructed with CALJIC No. 17.01 so that the failure to give CALJIC No. 17.01 was harmless beyond a reasonable doubt.

We reach this conclusion for several reasons. First, as noted, our review of the record indicates no rational basis, by way of argument or evidence, by which the jury could have distinguished between the two acts of oral copulation in question. Consequently, there is no reason to suspect the verdict was not unanimous.

Second, this is a case where other circumstances permit a rational inference the jury must have believed beyond a reasonable doubt that defendant committed each act of oral copulation. The jury was, of course, instructed with CALJIC No. 2.90, requiring them to find guilt beyond a reasonable doubt, and the jury clearly did so when it convicted defendant of sodomy on count III, and of unlawful sexual intercourse on count IV, where multiple criminal acts were not at issue. The quality of proof available to the jury on those counts was the same as on count II (oral copulation): the minor simply testified defendant committed those acts. The defense was the same as to all counts. The jury deliberated for only 25 minutes, requested no rereading of instructions or testimony, and returned convictions on all counts. Thus there is no indication that the jury applied a lesser standard of proof to count II than to counts III and IV, where it quickly reached verdicts of guilty beyond a reasonable doubt.

Under these circumstances, there is no rational basis to suspect the jury might have reached a different result had it been instructed with CALJIC No. 17.01. In order to conclude the instructional error was prejudicial, we would have to abandon common sense. ██ ██ ██ ██ It was error to fail to give CALJIC No. 17.01, but in the peculiar circumstances of this case, that error is of academic but not of practical consequence.[10]

---

*supra,* 9 Cal.3d at p. 766.) However, the trial judge made extemporaneous remarks to the jury to the effect that the jury could consider "whether there is enough of an explanation given by the defense case," and the Supreme Court held the remarks equivalent to an instruction reversing the burden of proof. (*People* v. *Serrato, supra,* 9 Cal.3d at pp. 766-767.) We assume, arguendo, the instructional error in the instant case had a substantial effect on the burden of proof and that *Serrato* controls the rule of harmless error here.

[10]In *People* v. *Williams, supra,* 133 Cal. at page 169, the court said that "the prosecuting officer, when he commences the trial of a case of this class, where he is at liberty to prove one of several different offenses under the indictment, should at least as early as the commencement of the trial, inform the defense upon proof of what specific offense he intends to rely, and if he does not, the first evidence which would tend in any degree to prove an offense shall be deemed a selection, and unless that precise offense is proven, the defendant is entitled to an acquittal." *People* v. *Castro, supra,* 133 Cal. at page 13, suggests that the failure of a prosecutor to elect an offense can be cured by an instruction to the jury directing their attention to the particular act that the state had to prove. Recent cases have assumed

We acknowledge that the result we arrive at is different from the result in our earlier decision, *People* v. *McNeill, supra,* 112 Cal.App.3d 330. There, defendant was convicted of assault with a deadly weapon and by means of force likely to produce great bodily injury in violation of Penal Code section 245, subdivision (a). Although defendant was charged with the crime in a single count, evidence at trial indicated that he fired a series of rapid shots in the direction of four friends of a shooting victim. This court held the failure to give an instruction such as CALJIC No. 17.01 to be reversible error because "the jurors could have differed in their individual verdicts as to the identity of the victim of the assault." (*People* v. *McNeill, supra,* 112 Cal.App.3d at p. 335.)

We need not reach the question of whether the failure to give CALJIC No. 17.01, or equivalent, might be deemed harmless error in a case, such as *McNeill,* involving separate acts arguably directed at different victims. Here, our concern is with one victim. Moreover, it does not appear to us that the question of harmless error was addressed in *McNeill,* possibly because *People* v. *Diedrich, supra,* upon which we base our conclusion in this case, was not decided until two years after *McNeill.* In any event, *McNeill* contains no discussion of any possible conflicts in the prosecution evidence that might allow the jury to discriminate among the four possible assaults, nor does the opinion indicate whether the defendant provided a defense to the assault charge.[11] Since the issues addressed here were simply not raised in *McNeill,* we conclude it does not control the result of this case.

## B

 Defendant also contends it was error to give CALJIC No. 4.71 and not CALJIC No. 4.71.5. (See fns. 2 & 3, *ante.*) We agree.

Where a defendant is charged in a single count, and the evidence shows more than one criminal act of the kind alleged, it is error to give CALJIC

---

that the failure of the prosecution to elect the act prosecuted is cured by the giving of an instruction requiring all jurors to agree that the defendant committed the same act. (See e.g., *People* v. *Alva, supra,* 90 Cal.App.3d at pp. 425-426; *People* v. *Crume* (1976) 61 Cal.App.3d 803, 809, fn. 4 [132 Cal.Rptr. 577].) Neither side has contended here that the failure of the prosecutor to elect the offense was not curable by an instruction. In any event, assuming, arguendo, the prosecutor should have elected the act constituting the crime "at least as early as the commencement of trial" (*Williams, supra,* 133 Cal. at p. 169), so that the defense could have reasonable notice of the charge requiring a defense, the prosecutor's failure to elect, in the circumstances of this case, constituted harmless error beyond a reasonable doubt. (*Chapman* v. *California, supra,* 386 U.S. 18.) Viewed in its entirety, the record indicates defendant would not have been aided one iota had the prosecutor selected one of the two acts of oral copulation as the charged offense.

[11]The opinion indicates only that defendant defended the murder charge by testifying the gun went off accidentally when the victim grabbed his wrist. (*People* v. *McNeill, supra,* 112 Cal.App.3d at p. 336.)

No. 4.71 because it does not require the jury to focus on a specific criminal act and to convict a defendant of that act beyond a reasonable doubt. (*People v. Madden* (1981) 116 Cal.App.3d 212, 215 [171 Cal.Rptr. 897]; *People v. Gavin, supra,* 21 Cal.App.3d at pp. 418-419.) The appropriate instruction, CALJIC No. 4.71.5, plays the same role as CALJIC No. 17.01 to the extent it requires the jury to agree beyond a reasonable doubt defendant committed the same act. (See *People v. Madden, supra,* 116 Cal.App.3d 312.) In the instant case, it was error to give CALJIC No. 4.71, rather than No. 4.71.5, for the same reason it was error to fail to give CALJIC No. 17.01: CALJIC No. 4.71 hypothetically allowed the jury to reach a nonunanimous verdict. We conclude the giving of CALJIC No. 4.71, and the failure to give No. 4.71.5, was harmless error beyond a reasonable doubt for the same reasons we concluded it was harmless error to fail to give CALJIC No. 17.01.[12]

## II

Defendant next contends, inter alia, that his conviction on count I for lewd and lascivious conduct (Pen. Code, § 288) must be reversed because the jury was not instructed that it could not use the same acts constituting oral copulation, sodomy, or unlawful sexual intercourse as the basis for a conviction on count I for lewdness.[13] The Attorney General has conceded that defendant's conviction on count I must be, and is hereby, reversed. (See *People v. Greer* (1947) 30 Cal.2d 589, 604 [184 P.2d 512]; *People v. Cline* (1969) 2 Cal.App.3d 989, 996-997 [83 Cal.Rptr. 246].)

## III

Defendant contends the entire judgment must be reversed because of the trial court's allegedly erroneous admission of the testimony of foster

---

[12]We note that it may be error to give CALJIC No. 4.71 for reasons not present in this case. *People v. Jones* (1973) 9 Cal.3d 546, at page 557 [108 Cal.Rptr. 345, 510 P.2d 705] holds it error to give CALJIC No. 4.71 "if the People's evidence fixes the commission of the offense at a particular time to the exclusion of any other time and the defendant has presented evidence of an alibi as to that particular time." In *People v. Barney, supra,* 143 Cal.App.3d at page 498, we held it error to give CALJIC No. 4.71 where defendant's defense was not alibi but was rather lack of opportunity to commit the offense at a specific time (defendant's son and daughter-in-law were present on the days the offenses were alleged to have occurred). In the instant case, defendant's defense was neither alibi nor lack of opportunity to commit the offense at a specific time. Consequently, while it was error to give CALJIC No. 4.71, it was not for the reasons discussed in *Jones* and *Barney.*

[13]The minor testified about four instances of sexual contact: (1) defendant touched her "secret" (identified by the court as her vagina) with his "wiener" and "put it in [her]"; (2) defendant touched her "in back" (identified by the court as "her bottom") with his "wiener" and put it in her; (3) defendant "french kissed" her "secret" and his tongue touched her there; and (4) defendant placed his "wiener" in her mouth and ejaculated. Any of the four acts described by the minor could obviously be considered lewd under Penal Code section 288.

mothers Wanda Hammerstaedt and Phyllis Johndrow concerning their observations of the minor's aberrant behavior while in their respective custody.

The prosecutor initially made an offer of proof as to this testimony, and offered to provide foundational expert testimony that the behavior exhibited by the minor was not normal for a person of her age, and that she would be incapable of fantasizing such behavior without exposure to it. The trial court initially ruled the proffered testimony inadmissible.

However, during cross-examination of the minor, defense counsel elicited testimony that is set forth in the margin,[14] suggesting the minor's foster

---

[14]The minor's testimony, with her name changed out of respect for her privacy, is as follows:

"Q. [by counsel for defendant] Did you tell somebody about what went on between you and your John, did you tell somebody about that?

"A. [by the minor] Yes.

"Q. Do you know when you told somebody about that?

"A. Yes.

"Q. Could you tell me when?

"A. I told my Mom when I went to my new house.

"Q. Okay. And is that your foster Mom?

"A. Yes.

"Q. So, that would have been about a year ago?

"A. Yes.

"Q. And why did you tell her about that, [Susan]?

"A. Because she told me to tell her.

"Q. What did she tell you to tell her?

"A. She told me what happened in California and I told her.

"Q. Did she tell you what happened?

"A. Yes.

"Q. What did she tell you?

"A. She told me what happened in California.

"Q. And what was it that she told you happened in California?

"A. She told me, did—she told me, 'Did your Daddy hurt you,' and I said, 'Yes.'

"Q. What next?

"A. And I told her, 'Yes, my Daddy did hurt me.'

"Q. Then what did she say?

"A. Well, she said, 'We're going to go and talk to Tom in a couple of days,' and I said, 'Who?' And she said, 'Tom.'

"Q. And did you go do that?

"A. Yes.

"Q. And was that the first person that you told?

"A. No. Two guys.

"Q. Who was the first one?

"A. I don't know but I forgot his name but not you, the other guy.

"Q. When was that, [Susan]?

"A. The first—Not yesterday.

"Q. *Before yesterday?*

"A. Yes.

"Q. Do you know how long before?

"A. No.

"Q. Did your foster mother tell you what happened first?

mother had told the minor what had happened to the minor in Shingletown. Following cross-examination, the trial court reversed its prior ruling and allowed the foster mothers to testify.

Thereafter, Wanda Hammerstaedt, a nurse, testified that the minor had been living with her since November 19, 1980. After the minor arrived at her foster home, Ms. Hammerstaedt observed her masturbating with a doll. When she asked the minor what she was doing, she stated "the same thing that her Dad had did to her," and that he had put "the weinee into her front." Also, Ms. Hammerstaedt observed the minor putting the dog's nose into the front of her panties. When asked by the foster mother about the behavior, the minor said she had learned it from her mother and father. Ms. Hammerstaedt denied suggesting any of the statements or behavior to the minor. Ms. Hammerstaedt also observed the minor urinate into her play teacup and drink the urine, and store and eat her own feces, acts which she was still doing at the time of trial.

Foster mother Phyllis Johndrow ran a receiving home for the county welfare department and housed the minor from October 28, 1980, until November 19, 1980. She testified that she had observed the minor lying on top of the family dog and going through the motion of a sexual act, with and without her pants on. On other occasions, she had seen the minor pull her panties down and stick the dog's nose in the area of her vagina.

We analyze the merits of defendant's objections[15] to the foregoing testimony by first looking at the logical inference that a jury could reasonably draw from the minor's testimony on cross-examination. One clear inference is that when Ms. Hammerstaedt allegedly told the minor "what happened in California," the foster mother planted in the minor's mind the false notion that the minor had been the victim of sexual abuse by her father and that the minor parroted this fabricated story at trial.

Defendant argues that the foster mothers' testimony was irrelevant because, without expert testimony, there was nothing to relate the bizarre and

---

"A. Yes.
"Q. What did she tell you?
"A. She told me but I forgot what she told me.
"Q. Did she tell you that your father did these things to you?
"A. Yes.
"Q. And after she told you that, what did you do?
"A. I talked to Tom."

[15]After the prosecutor made his offer of proof, defense counsel objected on the ground of lack of foundation. We understand the objection to be aimed at an alleged need for foundational expert testimony. At the time the testimony was actually presented, defense counsel simply stated objection, without stating the legal basis thereof. Near the end of the trial, the judge said he understood the objection to be based on lack of relevancy. We treat the second objection as did the trial judge.

disturbing conduct of the minor to what may have been done to her by her father. However, defendant mistakes the purpose for which the testimony was admitted. The purpose was not, as defendant suggests, to show that defendant, in fact, committed the acts in question. Rather, the purpose was to rebut the inference, created by cross-examination of the minor, that the minor told a false story at trial that had been earlier fabricated by her foster mother.[16]

■ "We begin with the principles that except as otherwise provided by statute 'all relevant evidence is admissible' (Evid. Code, § 351); that 'relevant evidence' is all evidence 'including evidence relevant to the credibility of a witness or hearsay declarant, having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action' (*id.*, § 210); and that the trial court is vested with wide discretion in determining relevance under this standard (*People v. Warner* (1969) 270 Cal.App.2d 900, 908 [76 Cal.Rptr. 160], and cases cited)." (*People v. Green* (1980) 27 Cal.3d 1, 19 [164 Cal.Rptr. 1, 609 P.2d 468].) "The test of relevancy is whether the evidence tends, logically, naturally, or by reasonable inference to establish a material fact, not whether it conclusively proves it. (*People v. Ott* (1978) 84 Cal.App.3d 118, 127 [148 Cal.Rptr. 479].) '[T]o be admissible, evidence need not absolutely confirm anything. It is axiomatic that its weight is for the jury.' (*People v. Vernon* (1979) 89 Cal.App.3d 853, 869 [152 Cal.Rptr. 765].)" ■ ■ ■ ■ (*People v. Peggese* (1980) 102 Cal.App.3d 415, 420 [162 Cal.Rptr. 510].)[17]

---

[16]The context in which the trial court made its ruling was as follows:

"THE COURT: In regard to the ruling I made with respect to the offer of proof, in view of the cross examination of the minor I'll have to modify that rule now because of the suggestion by Mr. O'Connor with respect to the manner in which this was reported and the persons to whom the minor reported and what they—what the conversations were. The— That whole area was opened up by these questions and of course, you may present testimony with respect to the reporting incidences through the foster mothers and the police.

"MR. BRADY [prosecutor]: Your Honor, does that include what brought the subject up?

"THE COURT: Yes, indeed it does, and what motivated the custodial parents or whatever they were as to inquiring as to what occurred. I would—I must do that now because of the scope of the cross examination of the minor."

[17]Evidence Code section 352 provides that the court, in its discretion, may exclude evidence if its probative value is substantially outweighed by the probability that its admission will create a substantial danger of undue prejudice. However, "[s]ince Evid C § 352 deals with the exercise of a judge's discretion, an objection to proffered evidence is normally not construed as a request that he exercise his discretion to exclude relevant evidence. If, for example, an irrelevancy objection is made to proffered evidence, the trial judge may overrule the objection without considering Evid C § 352, assuming, of course, that the evidence is relevant." (1 Jefferson, Evidence Benchbook (2d. ed. 1982) § 22.1, p. 590.) No Evidence Code section 352 objection, nor anything remotely resembling one (compare *People v. Mixon* (1982) 129 Cal.App.3d 118, 137-138 [180 Cal.Rptr. 772]) was made in this case. Since the trial judge was never requested to exercise his discretion under section 352 (compare *People v. Green, supra*, 27 Cal.3d at p. 24), we limit inquiry to whether the evidence in question was relevant.

Keeping in mind the purpose for which the evidence was offered, we conclude that Ms. Hammerstaedt's descriptions of the minor's deviant sexual behavior with the doll and the dog tended to establish a material fact and was therefore relevant. The testimony tended to show that the foster mother did not fabricate reports of the minor's prior sexual experiences but rather learned of those experiences from the minor in response to questions provoked by the minor's abnormal conduct. Phyllis Johndrow's testimony, describing the minor's sexual acts with a dog similar to those observed by Ms. Hammerstaedt, tended to corroborate Ms. Hammerstaedt's testimony.

It is established that in sex cases involving minor victims, where the credibility of the minor victim is impeached on cross-examination in such a way that a jury may believe that charges have been fabricated, evidence of the circumstances of the minor's complaint, made within a reasonable time of the sex offense complained about, is admissible to rebut the inference of fabrication. (See *People* v. *Burton* (1961) 55 Cal.2d 328, 351 [11 Cal.Rptr. 65, 359 P.2d 433]; *People* v. *Pacheco* (1963) 220 Cal.App.2d 320, 324 [33 Cal.Rptr. 735].) Indeed, we find *Pacheco* controlling here. There, reviewing defendant's conviction for violation of Penal Code sections 288 and 288a, involving an eight-year-old victim, the court upheld the admission of statements made by the minor to his mother: "The mother of the victim was permitted to testify that she and her son had a conversation about his use of indecent language involving an act of sex perversion; that as a result of this conversation she made a complaint to the sheriff's office; and that her son related what he had told her to a deputy sheriff. The latter testified that, on August 25, 1960, he had a conversation with the boy in the presence of his parents; that he received a complaint as to a sex offense; that the boy made some statements respecting his being molested while in his own home on the night his mother went to the hospital; and that he, the sheriff, made a report of this conversation. [¶] The foregoing testimony was introduced to rebut any inference of recent fabrication based on facts developed upon cross-examination of the victim by counsel for the defendant." (*People* v. *Pacheco, supra,* 220 Cal.App.2d at p. 324.)

Just as the minor's use of indecent language provoked a mother's conversation with her son in *Pacheco,* here the minor's deviant sexual behavior provoked a similar inquiry from a foster mother. We perceive no material difference.

Defendant suggests that the evidence could not be probative without a foundation supplied by an expert witness. The applicable rule is that "If the matter in issue is one within the knowledge of experts *only* and not within the common knowledge of laymen, it is necessary for the plaintiff to introduce expert opinion evidence in order to establish a prima facie case.

(See *Huffman* v. *Lindquist,* [1951], 37 Cal.2d 465, at pp. 473, 474-475 [234 P.2d 34, 29 A.L.R.2d 485]; *Lawless* v. *Calaway* (1944) 24 Cal.2d 81, 88-89 [147 P.2d 604]; *Truman* v. *Vargas* (1969) 275 Cal.App.2d 976, 982-983 [80 Cal.Rptr. 373].)" (*Miller* v. *Los Angeles County Flood Control Dist.* (1973) 8 Cal.3d 689, 702 [106 Cal.Rptr. 1, 505 P.2d 193], italics in original.) ▆▆▆ However, the need for expert testimony, like the question of relevance, depends on how one frames the question asked and the information to be elicited. Here, the question asked is *not* whether deviant sexual conduct, such as that exhibited by the minor, is the necessary product of sexual acts committed on the minor. Rather, the question, as correctly framed, is simply whether the kind of sexual conduct engaged in by the minor was sufficiently abnormal so that it would have provoked a reasonable person to ask the minor about the origin of the conduct. No expert was needed in this case to tell a jury that the minor's sexual conduct was sufficiently abnormal for that purpose; that conclusion was clearly within the common knowledge of laymen. (See, e.g., *Estate of Goulart* (1963) 222 Cal.App.2d 808, 817 [35 Cal.Rptr. 465] [nonexpert "intimate acquaintance" allowed to testify as to whether testatrix was of sound mind]; *People* v. *Ravey* (1954) 122 Cal.App.2d 699, 702-703 [265 P.2d 154] [nonexpert allowed to express an opinion as to whether defendant was under the influence of intoxicating liquor].) Testimony of the foster mothers describing the minor's sexual acts with the dog and the doll was properly admitted.

▆▆▆ We have a different view with respect to Ms. Hammerstaedt's description of the minor's eating her feces and drinking her urine. So far as the record discloses, the minor's scatological conduct did not cause Ms. Hammerstaedt to ask the minor about any prior sexual experiences. Rather, the foster mother described this behavior in response to a question by the prosecutor asking whether she had observed "any other unusual behavior." Since the foster mother's description of this behavior was unrelated to the minor's complaints about prior sexual conduct, the testimony was irrelevant. However, in light of other properly admitted evidence describing repulsive sexual acts committed by a father on his child, we conclude that the erroneous admission of testimony related to the minor's scatological behavior was harmless; it is inconceivable that a result more favorable to defendant would have been obtained in the absence of this testimony. (*People* v. *Watson, supra,* 46 Cal.2d at p. 836.)

IV

Defendant contends, and the Attorney General concedes, that the case must be remanded in order for the trial court to state reasons for its sentencing choices. (See *People* v. *Manning* (1982) 133 Cal.App.3d 159, 170

[183 Cal.Rptr. 727]; *People* v. *Bejarano* (1981) 114 Cal.App.3d 693, 704 [173 Cal.Rptr. 71].) The trial court shall do so.

Defendant's final contention on appeal is that the trial court erred in computing his presentence credit. The trial court, by minute order, deleted 112 days' credit for time defendant spent in Atascadero State Hospital. Defendant notes that he is entitled to credit for time spent in Atascadero by virtue of Penal Code section 1375.5. The Attorney General suggests that the trial court meant to delete good behavior credits which are not available to defendants in state hospitals. (See Pen. Code, § 4019; *People* v. *Sage* (1980) 26 Cal.3d 498, 502-503 [165 Cal.Rptr. 280, 611 P.2d 874].) Because of the reversal of count I, and the necessity to have the trial court state sentencing choices, resentencing will be necessary. In connection with resentencing the trial court shall give defendant credit for actual days spent at Atascadero State Hospital; no additional credit for good behavior shall be given. (Pen. Code, § 1375.5; *People* v. *Sage, supra.*)

### DISPOSITION

The judgment is reversed as to count I, affirmed as to counts II, III and IV, and remanded to the trial court for further proceedings consistent with this opinion.

Evans, Acting P. J., and Sparks, J., concurred.

On October 13, 1983, the opinion was modified to read as printed above. Appellant's petition for a hearing by the Supreme Court was denied December 1, 1983. Reynoso, J., was of the opinion that the petition should be granted.