[No. B086245. Second Dist., Div. Seven. June 5, 1996.]

THE PEOPLE, Plaintiff and Respondent, v.
OBI NWAFOR, Defendant and Appellant.

**COUNSEL**

Obi Nwafor, in pro. per., and William Flenniken, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Norman H. Sokolow and Douglas L. Wilson, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**WOODS, J.**—In this multiple-conviction child molestation case, appellant's principal contention is evidentiary insufficiency that some of the offenses were committed during the period they were alleged to have been committed. We find this and the other contentions meritless and affirm the judgment.

## Procedural and Factual Background

By amended information appellant was charged with 14 offenses; 13 involved victim Uchenna O., 1 involved her older sister Ihunna. The jury convicted appellant of twelve, acquitted him of one, and hung on one, the sole offense involving Ihunna.

As to these 12 offenses, all involving Uchenna O., 4 were alleged to have occurred during the period June 1, 1988, through August 31, 1989. Counts I, II, and III were acts of sexual intercourse in violations of Penal Code section 288, subdivision (a). (Statutory references, unless otherwise noted, are to the Penal Code.) Count IV (§ 288, subd. (a)) involved masturbation of appellant.

Counts V and VI (§ 288, subd. (c)), intercourse and masturbation, were alleged to have occurred during the period June 1, 1990, through August 31, 1990.

Counts VII (§ 288, subd. (c): sexual intercourse), VIII (§ 288, subd. (c): masturbation), and IX (§ 286, subd. (b)(2): sodomy) were alleged to have occurred during the period June 1, 1991, through August 31, 1991.

Counts X (§ 288a, subd. (b)(1): oral copulation) and XI (§ 288, subd. (c): sexual intercourse) were alleged to have occurred during the period April 22, 1990, through April 21, 1992.

Finally, count XIII (§ 261.5, subd. (a): unlawful sexual intercourse with a minor, a misdemeanor) was alleged to have occurred on April 15, 1993.

Despite the length of the trial (6 weeks: April 13, 1994, to May 24, 1994) and size of the record (705 pages of clerk's transcript and 2,239 pages of reporter's transcript) the essential facts may be stated briefly. Our perspective favors the judgment. (*People* v. *Barnes* (1986) 42 Cal.3d 284, 303-304 [228 Cal.Rptr. 228, 721 P.2d 110].)

The victim's mother and appellant's wife had lived in the same village in Nigeria and the two families, appellant's and the victim's, were close friends in the United States. Appellant was the victim's godfather and his wife her godmother.

In 1987 appellant worked for Prudential as an insurance agent and sometime in 1988, while still working for Prudential, started his own insurance business on Crenshaw Boulevard. The victim began working for appellant

during the summer of 1988 when she was 12 years old.[1] She worked for him each of the following three summers. During each of these summers sex acts with appellant occurred, always at his office on Crenshaw.

During the summer of 1992, when the victim was 16 years old, she did not work for appellant, she worked at McDonald's. Several times that summer, appellant picked up the victim from McDonald's, took her to his office, and had sex with her.

Other sexual acts occurred in early 1993. The last act of sexual intercourse occurred on April 15, 1993, an Easter Thursday, at appellant's office. That night the victim and her younger brothers slept at appellant's house because the next day appellant was to take them, and his own children, to Disneyland.

Friday morning, April 16, 1993, before leaving for Disneyland, the victim was showering when appellant entered the bathroom and closed the door. Immediately, appellant's wife opened the door and saw the two of them. Appellant left. Later that morning, appellant's wife asked the victim if anything had happened and the victim said no.

Still suspicious, appellant's wife called the victim's mother and told her what she had seen. The victim's mother said she wanted appellant to bring the victim home Friday night, when they returned from Disneyland. But it was late when appellant and the children returned from Disneyland Friday night and they slept at appellant's house. The victim's mother called again and said she wanted her daughter brought home Saturday morning.

Saturday afternoon, April 17, 1993, when the victim's mother returned home from work, she asked the victim if anything had happened between her and appellant. The victim said no. There was more questioning and more denials. The victim's mother telephoned her husband and he spoke to the victim. Then the victim and her mother went upstairs to her parents' bedroom where the victim told her mother she and appellant had had intercourse.

The victim's mother became hysterical, ran to the stairway and shouted to her older daughter ". . . your sister has killed me, your sister has killed me." She then started beating the victim with her husband's shoe. The victim said, "I'm sorry, mommy" but when the beating continued she ran out of the house.

On Sunday, April 18, 1993, no one in the victim's family spoke to the victim. The family went to church, as usual, but no one—during the regular church ritual—shook hands with her.

---

[1] She was born April 22, 1976.

On Monday, April 19, 1993, the victim's mother took her to the police station, where Officer Linda Compton interviewed the victim. Appellant was arrested later that day.

## DISCUSSION

1.  *Were counts I, II, III, and IV committed during the alleged period June 1, 1988, through August 31, 1989?*

*What* first happened and *where* it happened was not in doubt. The victim's testimony was detailed and consistent.

She was in appellant's office on Crenshaw when he started massaging her shoulders. Appellant then removed her shorts and panties, took off his own lower garments, sat in his armless desk chair, and had the victim sit on his lap with his erect penis painfully entering her vagina.

*When* this happened was in doubt. The victim was sure it occurred during the summer, from mid-June through August, but whether in 1988 when she was 12 or 1989 when she was 13, the victim was unsure.

■ Appellant, in his two-part argument, contends it is inherently improbable this first offense occurred in the summer of 1988. Respondent disagrees.

Although there was some evidence this first offense might have occurred in 1988, we would hesitate to characterize this evidence as substantial. The most persuasive evidence established appellant first rented his Crenshaw office in August 1988 and, at that time, his wife and young children were frequently there.

We agree with the first part of appellant's argument: the first offense occurred during the summer of *1989*.

The second part of appellant's argument is based upon the assumption that the conduct involved in counts II, III, and IV occurred in 1990, the summer *after* the first offense. If so, these counts were outside the alleged period and cannot be sustained. Appellant's assumption is mistaken.

When the victim was asked, "Do you remember the second time that something happened, if it was the same summer as the first time?" she said she didn't know "for sure." But a year earlier, on April 19, 1993, when Officer Linda Compton interviewed her, the victim *was* sure. She told

Officer Compton the second act of intercourse occurred *three weeks* after the first act. Officer Compton testified she asked the victim when the second, similar sex act occurred and the victim told her "sometime in that same summer . . . somewhere in August."

As to the acts involved in counts III and IV, the victim testified they occurred the same summer as the second act of intercourse.

We find substantial evidence that counts I, II, III, and IV were committed during the period alleged, June 1, 1988, through August 31, 1989.

2. *Unanimity instructions.*

■ Appellant contends the trial court's instructions allowed the jury "to base convictions on an occurrence outside the dates alleged in the information." Appellant is mistaken.

Appellant concedes "[t]he jury was correctly instructed with CALJIC No. 4.71.5 and CALJIC No. 17.01 . . . ."

The trial court instructed the jury: "The defendant is accused of having committed the crime of Lewd Act Upon a Child in Counts one through Eight and Count Eleven. For each count, the type of act such as penetration of the vagina by the penis or masturbation, is set forth in the special allegation of that count. The prosecution has introduced evidence tending to prove that there is more than one such act upon which a conviction on any particular Count may be based. Defendant may be found guilty if the proof shows beyond a reasonable doubt that he committed any one or more of such acts of the type specified in the special allegation for that count.

"However, in order to return a verdict of guilty to any particular Count, all jurors must agree that he committed the same act as to that Count. It is not necessary that the particular act agreed upon be stated in your verdict." (CALJIC No. 17.01.)

Further, the trial court instructed them: "Defendant is accused in Counts One through Eleven of the information of having committed the crime alleged in each Count on or about a period of time between certain dates.

"In order to find the defendant guilty, it is necessary for the prosecution to prove beyond a reasonable doubt the commission of a specific act or acts constituting that crime within the period alleged.

"And, in order to find the defendant guilty, you must unanimously agree upon the commission of the same specific act or acts constituting the crime within the period alleged.

"It is not necessary that the particular act or acts committed so agreed upon be stated in the verdict." (CALJIC No. 4.71.5 (1990 rev.).)

Instructional error occurred, appellant contends, by the giving of CALJIC No. 4.71. It provides: "When, as in this case, it is alleged that the crime charged was committed 'on or about' a certain date, if the jury finds that the crime was committed it is not necessary that the proof show that it was committed on that precise date; it is sufficient if the proof shows that the crime was committed on or about that date."

Appellant sweepingly asserts, "There can be absolutely no doubt that the jury applied CALJIC No. 4.71 to counts one through eleven." The opposite is true.

Counts I through XI did *not* contain the "on or about" language referred to in CALJIC No. 4.71. Rather, each of those counts referred not to a precise date but to a period of time and contained the phrase "on and between." Each guilty verdict on counts I through XI used the phrase "on and between" not "on or about." Thus, it is clear, CALJIC No. 4.71 did not apply to counts I through XI and was understood by the jury as being inapplicable to those counts.

Only count XIII[2]—about which appellant is silent—specified a single date, April 15, 1993, and used the "on or about" phrase of CALJIC No. 4.71. Since this count specified a single date, the trial court properly gave CALJIC No. 4.71. There was no confusion or error and appellant's reliance upon *People* v. *Deletto* (1983) 147 Cal.App.3d 458 [195 Cal.Rptr. 233] is misplaced.

3.  *Alleged juror misconduct and trial court coercion.*[3]

█ ▪It was brought to the trial court's attention that an alternate juror said something to the victim during a recess, when the victim was seated outside the courtroom. The trial court separately questioned the alternate juror and the victim. Although the trial court excused the alternate juror, defense counsel requested the trial court to separately question every juror. The trial court did so. None had heard or observed the communication.

---

[2]Count XII also used this phrase but appellant was found not guilty of that offense.

[3]This and the subsequent contentions are raised by appellant in his supplementary propria persona brief.

Appellant claims the trial court's questioning of all the jurors—he omits mentioning it was done at the request of his attorney—constitutes prejudicial coercion. The contention does not bear scrutiny.

### 4. *Alleged prosecutor misconduct.*

■ After appellant was arrested and charged he contacted the victim and urged her to call his attorney and say all the sex acts occurred *after* she was 16 years old. Appellant gave the victim a cellular phone and money, told her he loved her, and mentioned future marriage. The victim did as appellant requested. Appellant's attorney tape-recorded his interview of the victim.

Later, at the preliminary hearing, the victim was still trying to protect appellant.

Unsurprisingly, the victim's trial testimony contradicted her taped interview by defense counsel and much of her preliminary hearing testimony. Appellant claims the prosecutor committed misconduct by offering the victim's "perjured" trial testimony. The claim is self-refuting.

### 5. *Expert testimony.*

■ The prosecutor called an expert witness, Dr. Susan Moan-Hardie. She had obtained her doctorate in developmental psychology from the University of California at Los Angeles and had over 10 years' experience working with child molest victims. Defense counsel said he was "satisfied that the court would find her to be qualified."

Appellant now claims Dr. Moan-Hardie was *not* qualified and the trial court erred in allowing her to give opinion testimony. The contention is frivolous and, since no objection was made in the trial court, untimely. (Evid. Code, § 353.)

■ Respondent requests we correct the judgment by subtracting one day of custody credits. When, as here, a party has failed to object to the custody credit error in the trial court, the custody credit error is de minimis, the sentence is lengthy, and other issues dominate the appeal—we shall not entertain an issue of custody credit error.

## DISPOSITION

The judgment is affirmed.

Lillie, P. J., and Johnson, J., concurred.

A petition for a rehearing was denied July 5, 1996, and appellant's petition for review by the Supreme Court was denied September 18, 1996.