[No. G003980. Fourth Dist., Div. Three. Mar. 31, 1989.]

THE PEOPLE, Plaintiff and Respondent, v.
RAYMOND WADE ROBBINS, Defendant and Appellant.

[Opinion certified for partial publication.[1]]

---

[1] Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts III through VI.

## COUNSEL

John P. Ward, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Janelle B. Davis and Sara Gros-Cloren, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

WALLIN, J.—A jury convicted Raymond Wade Robbins of two counts of forcible oral copulation (Pen. Code, § 288a, subd. (c))[2] and one count of sexual penetration by force (§ 289, subd. (a)). The jury also found he used a deadly weapon (§ 12022.3) and inflicted great bodily injury in the commission of each offense (§ 12022.8). The court sentenced Robbins to the upper term of eight years on each count, to be served consecutively. Eight additional years were added to each count, also to be served consecutively, for knife use and infliction of great bodily injury. Another five-year enhancement was imposed for Robbins's admitted prior serious felony conviction (§§ 667 and 1192.7, subd. (c)).

Robbins urges the court committed both instructional and sentencing error. We disagree and affirm.

### I

Late on the evening of August 27, 1984, Robbins entered the Stanton apartments and found 68-year-old Jane M. asleep on her living room couch. He grabbed her around the neck, jerked her to her feet, knocked her glasses off her face and ripped her dentures from her mouth. After blindfolding her, he struck her in the head, knocking her to the floor. Robbins whispered he had a knife and knew how to use it, so she had better keep quiet. As Jane M.

---

[2] All statutory references are to the Penal Code.

lay on the floor, her attacker held the knife up beneath the blindfold and told her to look at it. She did so.

After Robbins forced Jane M. to remove her underwear, he struck her body and head several times with his fists. He told her to stand up, but because of her arthritis she could only get to her knees. Robbins grabbed Jane M.'s hair, dragged her into the bedroom, ripped off her remaining clothes and threw her on the bed. He forced her to orally copulate him approximately 12 times. At one point, Robbins forced her into a spread eagle position and stuck his finger into her vagina, causing her extreme pain.

Throughout the ordeal Robbins continued to beat his victim intermittently; he also bit her nipple, gouged her eye, and ran his knife down her spine. Before the last act of oral copulation Robbins ordered Jane M. to lick his anus. Unable to do so, she massaged his rectum with two fingers while orally copulating him. Soon Robbins fell asleep and Jane M. escaped, running naked to the apartment manager's office.

When the police arrived at Jane M.'s apartment they found Robbins asleep in her bed, his knife on the nearby nightstand. Jane M. was taken to the hospital where doctors diagnosed a fractured rib, cerebral concussion, vaginal abrasion, various injuries to her joints, and bruises to her arms. Her throat, ears, eyes, face and mouth were swollen and bruised. She remained in the hospital for almost a week.

## II

Robbins asserts an apparently novel theory of instructional error. Noting Jane M. sustained a variety of injuries in the attack, some of which may constitute great bodily injury while others may not, Robbins contends the court was required sua sponte to instruct the jurors they had to agree which injury or injuries supported each great bodily injury enhancement. He argues that, absent this instruction, a defendant is deprived of a unanimous verdict on the enhancing allegations.

Unanimity instructions (CALJIC No. 17.01) are required whenever more than one act could constitute the offense charged. (See *People v. Diedrich* (1982) 31 Cal.3d 263, 281 [182 Cal.Rptr. 354, 643 P.2d 971]; *People v. Crawford* (1982) 131 Cal.App.3d 591, 596-598 [182 Cal.Rptr. 536].) The impetus for CALJIC No. 17.01 is protection of the defendant's "right to have the jury agree unanimously on the criminal act or acts which supported his conviction." (*People v. Metheney* (1984) 154 Cal.App.3d 555, 565 [201 Cal.Rptr. 281].) "CALJIC No. 17.01 focuses the jury's attention on a specific act and requires the jury to determine guilt as to that act beyond a reasonable doubt." (*People v. Deletto* (1983) 147 Cal.App.3d 458,

472 [195 Cal.Rptr. 233].) The rule is limited by its rationale: "A unanimity instruction is required only if the jurors could otherwise disagree which act a defendant committed and yet convict him of the crime charged." (*People* v. *Gonzalez* (1983) 141 Cal.App.3d 786, 791 [190 Cal.Rptr. 554].) The same reasoning should, in general, apply to enhancements as well as the crimes that underlie them.

 In deciding whether a defendant inflicted great bodily injury during commission of a sex offense, thereby meriting a five-year enhancement under Penal Code section 12022.8, the jury is instructed to consider whether the victim suffered "a *significant or substantial* physical injury to any part or portion of the body . . . ." (CALJIC No. 17.20.1, italics added.) The jury is told the sex offense "in and of itself" does not constitute great bodily injury, and that "[m]inor or moderate injuries of a temporary nature, inherent in the [sex offense] do not constitute great bodily injury . . . ." (*Ibid.*) In other words, the jurors are to look at the nature and extent of the injury sustained and decide whether it rises to a level they consider significant or substantial.

This is a different kind of analysis than that contemplated by CALJIC No. 17.01. Here, the jury is not called upon to engage in fact finding per se; there is no danger the jury will convict a defendant of a crime based on two different factual scenarios, neither of which is believed by all twelve jurors. Instead, the jury performs a measuring function, deciding whether the victim suffered that quantum of injury legally defined as great bodily injury. To make this determination, the entire course of conduct and its overall result—not each act and individual injury—must be examined. Viewed in this light, it was unnecessary, on the facts of this case, to give CALJIC No. 17.01 in relation to the great bodily injury enhancement.

One juror may have found Jane M.'s fractured rib to be a substantial injury under the definition. Another may have considered the definition satisfied by the fracture in combination with the cerebral concussion. Others may have focused on the totality of the victim's injuries from the repeated beatings. It matters not that individual jurors may have differed in their view as to which particular injury or injuries constituted great bodily injury: The only requirement is that the jury unanimously find the injury sustained by Jane M. to be significant or substantial.[3]

 Furthermore, CALJIC No. 17.01 is based on a line of cases holding that where multiple acts are placed before a jury, each of which is a separate

---

[3] Not well taken is Robbins's argument a juror may have concluded Jane M.'s injury constituted great bodily injury on the basis of a minor injury like bruising, which does not amount to great bodily injury as a matter of law (see *People* v. *Martinez* (1985) 171 Cal.App.3d 727, 735 [217 Cal.Rptr. 546]). It is unreasonable to think a juror would disregard more serious injuries and look only to the lesser ones in assessing the severity of the damage.

chargeable offense, the prosecution must elect the act on which the charge is premised: Otherwise, the jurors might " 'range over the evidence at will and pick out any one of the offenses upon which to found [their] verdict.' [Citations.]" (*People v. Mota* (1981) 115 Cal.App.3d 227, 231 [171 Cal.Rptr. 212], quoting *People v. Yarber* (1979) 90 Cal.App.3d 895, 910 [153 Cal.Rptr. 875].) But there is an exception to the rule where a series of acts is so closely connected in time that it forms part of one transaction. (*People v. Mota, supra,* 115 Cal.App.3d at p. 233.)

In *Mota* several men robbed the occupants of a car and kidnapped one of them, a young woman. After driving the victim to a secluded area, three of the men gang raped her for about an hour. Mota contended the trial court erred in not forcing the prosecution to elect which incident it relied on for each of the rape counts. The appellate court disagreed, noting "[t]he election cases feature circumstances wherein the criminal acts were separated by days, weeks or months, and sometimes the acts occurred in different places, thus forcing the prosecution to choose which act they [*sic*] were relying upon so that the defendant could be put on notice and properly defend the charges. [Citations.]" (*People v. Mota, supra,* 115 Cal.App.3d at p. 232.) Since the acts in *Mota* were so close together they formed but one event, election was not required. (*Id.,* at pp. 233-234.)

▨ The same is true here. Robbins's attack on his victim was one prolonged assault, of which the individual blows and other indignities were inseparable components. On these fact, the trial court was not required to give CALJIC No. 17.01.

### III-VI*

. . . . . . . . . . . . . . . . . . . . . .

The judgment is affirmed.

Scoville, P. J., and Crosby, J., concurred.

Appellant's petition for review by Supreme Court was denied June 28, 1989.

---

*See footnote 1, *ante,* page 261.