Filed 10/10/13  P. v. Crawford CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 977(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 977(b).  This opinion has not been certified for publication or ordered published for purposes of rule 977.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>          Plaintiff and Respondent,<br><br>v.<br><br>OTIS MIGUEL CRAWFORD,<br><br>          Defendant and Appellant. | A134564<br><br>(Alameda County<br>Super. Ct. No. 165116)<br><br>ORDER MODIFYING OPINION AND<br>DENYING REHEARING<br><br>[NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on September 11, 2013, be modified as follows:

1.  On page 5, after the first partial paragraph on the page and before section II.B., add the following two paragraphs and new footnote 3, which will require renumbering of all subsequent footnotes:

> While defendant does not expressly argue the need for unanimity on the facts supporting an enhancement allegation, he does cite to *People v. Robbins* (1989) 209 Cal.App.3d 261 (*Robbins*), which, he claims, holds that a unanimity instruction is required when "there is evidence of multiple, distinguishable acts on which jurors could rely in making true findings on an enhancement."  That seriously mischaracterizes the holding of *Robbins*, which is entirely consistent with our decision.  The defendant in *Robbins* was charged with sexual assault and an enhancement for the infliction of great bodily injury.  (*Id.* at p. 263.)  In the course of the assault, he had inflicted a multitude of injuries on the victim, some serious and some less so.  The defendant argued a unanimity instruction was required with respect to which particular injury supported the enhancement allegation.  (*Id.* at p. 264.)  The court rejected the argument for essentially the reasons stated

above:  that the unanimity doctrine comes into play only when there is evidence of more than one "separate chargeable offense."  It was not triggered merely because there were several separate injuries.  (*Id.* at pp. 265–266.)

Notwithstanding its holding, *Robbins* did state in dictum, " 'A unanimity instruction is required only if the jurors could otherwise disagree which act a defendant committed and yet convict him of the crime charged.' [Citation.]  The same reasoning should, in general, apply to enhancements as well as the crimes that underlie them." (*Robbins, supra*, 209 Cal.App.3d at p. 265.)  As stated above, we have found no case, and defendant cites no case, that actually employs the *Robbins* dictum in requiring unanimity on the acts underlying a sentencing enhancement.[3]  The reason is straightforward.  While it is perhaps conceivable in theory that the acts proven in support of an enhancement allegation could constitute more than one separate, independent chargeable offense, in practice these acts will rarely, if ever, constitute even a single chargeable offense, let alone more than one.  Rather, as we stated above, they will be aspects of "how th[e] crime was committed," on which the jury need not agree. (*Russo, supra,* 25 Cal.4th at p. 1132.)

[3] While a few other cases have discussed unanimity in the context of enhancement allegations, they have all found no requirement to instruct. (See *People v. Ortiz* (2012) 208 Cal.App.4th 1354, 1376–1377; *People v. Bragg* (2008) 161 Cal.App.4th 1385, 1402; *People v. Ortega* (2006) 145 Cal.App.4th 1344, 1357.)

2.  On page 10, delete footnote 4.

There is no change in the judgment.

Defendant's petition for rehearing is denied.

Dated:

_____
Margulies, Acting P.J.

2

Filed 9/11/13 (unmodified version)

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br>v.<br><br>OTIS MIGUEL CRAWFORD,<br><br>     Defendant and Appellant. | A134564<br><br>(Alameda County<br>Super. Ct. No. 165116) |

Defendant was convicted of second degree robbery after he shot an ice cream vendor.  The victim testified a man identified by others as defendant pointed a revolver at him, threatened him, and pulled the trigger, but the gun did not fire.  When the victim then struggled with defendant over control of the gun, defendant fired two shots, the second of which struck the victim.  Defendant contends the trial court erred in not giving a unanimity instruction with respect to the personal discharge of a firearm enhancement, failed to respond to a jury note, and improperly refused to appoint substitute counsel.  He also contends his admission of his prior convictions was invalid.  We affirm.

## I.  BACKGROUND

Defendant was charged in an information, filed December 16, 2010, with attempted second degree robbery (Pen. Code,[1] § 211) and possession of a firearm by a felon (§ 12021, subd. (a)(1)).  As to the attempted robbery charge, it was alleged defendant personally discharged a firearm, causing great bodily injury (§§ 12022.5,

---

[1] All statutory references are to the Penal Code.

subd. (a), 12022.7, subd. (a), 12022.53, subds. (b), (c), (d), (g)), personally inflicted great bodily injury (§§ 1192.7, subd. (c)(8), 12022.7, subd. (a)), and committed the offense while on parole (§ 1203.085, subd. (b)). Defendant was also alleged to have a prior strike and serious felony conviction (§§ 667, subds. (a)(1), (e)(1), 1170.12, subd. (c)(1)) and four other felony convictions for which he served prison terms (§ 667.5, subd. (b)).

The victim testified he was selling ice cream from a pushcart around noon on the day of the attempted robbery. Three people, one later identified by other witnesses as defendant, walked up to the cart. Defendant said he wanted to buy ice cream. The two others moved to surround the victim. After the victim gave defendant ice cream, defendant took a revolver from his pocket, pointed it at the victim's face, and said, "You know what? I'm going to kill you." When the victim asked why, defendant pulled the trigger of the revolver, but the weapon did not fire.

The victim then grabbed the wrist of the hand holding the gun. As the pair struggled, the gun fired, this time sending a bullet through the brim of the victim's cap. Defendant pushed the victim against the cart, causing him to fall to the ground. As the victim tried to pull himself up, defendant moved behind him and shot him in the shoulder. When the victim slumped to the ground, defendant pushed him over and searched his pockets before walking off.

The victim's statement to the police, dictated during his stay in the hospital after the shooting, differed somewhat from his testimony at trial. The statement made no reference to an initial trigger pull that did not result in the gun firing. Instead, the victim said he "grabbed the gun and struggled with the male suspect. All of sudden [*sic*] I heard two shots, and then a sharp pain near my neck. I then fell to the ground knowing I was shot."

Although the victim was unable to identify the shooter, a pair of witnesses saw the shooting from a distance, identified defendant as the shooter, and followed him and the two others as they went into a nearby park restroom. When the three emerged, defendant began playing basketball on a nearby court. He was arrested there. Police found a

2

revolver in a trash can near the restroom. The cylinder of the revolver contained one empty chamber, two expended bullet cartridges, and two live cartridges.

The jury convicted defendant on both counts and found the allegations to be true. The trial court imposed a sentence of 34 years to life in prison.

## II. DISCUSSION

Defendant contends the trial court erred in not giving a unanimity instruction with respect to the section 12022.53 enhancement allegation, failed to respond to a jury request, and improperly refused to appoint substitute counsel. He also contends his admission was insufficient to support the trial court's finding he suffered the prior convictions alleged in the information.

### A. *Unanimity Instruction*

Defendant argues the jury could have concluded the section 12022.53 allegation, requiring an intentional discharge of a firearm, was supported either by the initial trigger-pull, which defendant incorrectly characterizes as a "misfire," or the subsequent shot that sent a bullet into the victim's shoulder.[2] He contends the jury was required to agree on which of these alternatives was the factual predicate for its finding the allegation true and seeks reversal because the trial court failed to give a unanimity instruction.

"In a criminal case, a jury verdict must be unanimous. [Citations.] . . . Additionally, the jury must agree unanimously the defendant is guilty of a *specific* crime. [Citation.] Therefore, cases have long held that when the evidence suggests more than one discrete crime, either the prosecution must elect among the crimes or the court must require the jury to agree on the same criminal act. [Citations.] [¶] This requirement of

---

[2] Contrary to defendant's contention, the initial trigger pull would not have supported an enhancement under section 12022.53, subdivision (d), which requires the intentional "discharge" of a firearm. While a firearm need not emit a bullet in order to have been "discharged," some type of ignition must occur in the firing chamber. (*People v. Grandy* (2006) 144 Cal.App.4th 33, 42–43.) A mere trigger pull is analogous to the display of an unloaded or inoperable firearm, which qualifies only as the "use" of a firearm under section 12022.53, subdivision (b). (*Grandy*, at p. 42.) Although we do not accept the premise asserted by defendant for his argument, we nonetheless consider it because there is no question more than one "discharge" of the revolver occurred.

3

unanimity as to the criminal act 'is intended to eliminate the danger that the defendant will be convicted even though there is no single offense which all the jurors agree the defendant committed.' " (*People v. Russo* (2001) 25 Cal.4th 1124, 1132 (*Russo*).) While the jury must agree on which crime defendant committed, there is no similar rule regarding the manner in which the crime was committed. "[W]here the evidence shows only a single discrete crime but leaves room for disagreement as to exactly how that crime was committed or what the defendant's precise role was, the jury need not unanimously agree on the basis or, as the cases often put it, the 'theory' whereby the defendant is guilty." (*Ibid.*)

No unanimity instruction was required here because there was no evidence of more than one criminal event. As noted above, the constitutional requirement of unanimity applies when "the evidence at trial indicates that the defendant committed more than one ' "discrete criminal event." ' " (*People v. Quiroz* (2013) 215 Cal.App.4th 65, 73.) "Where the evidence suggests that the defendant might have committed more than one crime, the court must instruct the jury that it must agree on *which* of the acts— and, hence, which of the *crimes*—the defendant committed." (*Ibid.*) In contrast, a unanimity instruction is not required " 'when the acts alleged are so closely connected as to form part of one transaction.' " (*People v. Benavides* (2005) 35 Cal.4th 69, 98.) Here, only one discrete criminal event was alleged and proven: defendant's attempt to rob the ice cream vendor. All of the events about which evidence was presented at trial occurred within seconds of each other in a single, uninterrupted flow as part of that attempt. In particular, each trigger pull by defendant occurred in the course of this single criminal "transaction." Because there was evidence of only one possible crime, the trial court was under no duty to instruct on unanimity.

In truth, defendant's argument is not premised on the existence of more than one criminal event but on the existence of more than one act to support the sentencing enhancement alleged in connection with this single crime. We are unaware of any case holding that unanimity is required with respect to the facts underlying an individual sentencing enhancement allegation, and defendant makes no argument for the imposition

4

of such an unprecedented requirement.  On the contrary, the facts underlying a sentencing enhancement allegation are, at bottom, the elements of "exactly how th[e] crime was committed," an issue on which the jury need not agree.  (*Russo, supra,* 25 Cal.4th at p. 1132.)

**B.  *The Jury's Note***

In the course of its deliberations on the morning of October 5, 2011, the jury sent a note seeking clarification of the definition of "discharge" for purposes of section 12022.53.  Citing the absence in the appellate record of any indication the trial court notified defense counsel of this note or responded to it, defendant argues the trial court failed in its " 'mandatory duty' " to respond to jury inquiries.  (*People v. Beardslee* (1991) 53 Cal.3d 68, 96–97.)

Just as defendant argues, the appellate record is silent about the fate of the jury's note.  The trial court's minutes reflect the jury's sending of the note, but there is no indication in the minutes how or whether the note was addressed by the court and counsel.  Further, there is no reporter's transcript in the record of the proceedings on the morning of October 5, despite the jury's deliberations that morning.  The transcript for that day does not commence until shortly after noon with the announcement the jury had reached a verdict.

Error by the court in the execution of its duties must be proven affirmatively in the record.  (*People v. Sullivan* (2007) 151 Cal.App.4th 524, 548.)  "[T]he defendant . . . bears the burden to provide a record on appeal which affirmatively shows that there was an error below, and any uncertainty in the record must be resolved against the defendant."  (*Id.* at p. 549.)  Mere silence by the record is not, in these circumstances, sufficient to support an affirmative conclusion the trial court failed to respond to the jury's notes.  Particularly because the minutes are inconsistent in their treatment of earlier jury communications for which a transcript is available, the absence of a notation in the minutes that the trial court responded to this note does not permit an inference nothing was done.  To conclude affirmatively that no action was taken on the note would require a reporter's transcription of the events in court that morning, showing receipt of the note

5

and a subsequent absence of action.  As noted above, there is no transcript in the record.  In its absence, we must presume the trial court properly performed its duties.[3]  (*Sullivan*, at p. 549.)

We note defendant's counsel states in his reply brief that he "anticipates the filing of a settled statement indicating that in unreported proceedings the court and counsel discussed the question but that the jury reached a verdict before a response to the question was provided."  Counsel does not appear to have filed the promised settled statement, and we cannot rely on his representation to resolve this issue.  We note, however, that his representation highlights the risk of presuming nonaction solely on the basis of a silent record.

## C.  Marsden *Issues*

Defendant contends the trial court erred in failing to grant two requests to replace his court-appointed attorney.  (See generally *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*).)

The first challenged *Marsden* request was addressed in a hearing on July 7, 2011.  Defendant told the court, "[T]he more I try, the harder it is to communicate" with counsel.  Although counsel had, most recently, met with defendant for two hours, he believed she adopted a "sassy attitude" whenever he attempted to bring up issues of law.  An argument developed, during which they "cuss[ed]" at each other, which resulted in defendant telling counsel to "leave."  In particular, defendant was frustrated because counsel repeatedly asked him to "waive time" to accommodate conflicts in her professional schedule.  In addition, he was concerned counsel had failed to confer with him regarding the preparation of his defense.

Counsel told the court she had over 30 years of experience as a criminal defense attorney.  She explained she had twice asked defendant to agree to a waiver of time

---

[3] Because the court reporter apparently was not asked to record the events surrounding the trial court's handling of the jury note, it would have been better practice for the court to make an oral record of the jury's question, any objections, and the ultimate answer or the reason for any failure to answer when transcription resumed.

because she had jury duty and was required to represent another client in trial. Counsel believed she had diligently pursued defendant's defense, evaluating discovery and conferring with the prosecution. She acknowledged she had disagreed with defendant about certain legal issues and defendant had resisted her advice to accept the prosecution's plea offer. Despite those differences, counsel believed "it's not going to be a wonderful relationship, but I think we can get along nice."

The trial court denied the request, finding counsel more credible in describing the relationship. The court initially told defendant he was lucky because his attorney was a very experienced defense lawyer with a "great reputation in the legal community." The court noted it had granted an earlier *Marsden* request by defendant because his relationship with that attorney "had totally broken down," but the court said it did not "see a problem here." Although the court recognized counsel might have "raise[d] her voice" in speaking with defendant, it concluded that alone was insufficient to justify counsel's replacement.

The second hearing occurred near the close of defendant's case at trial, on October 3, 2011. Defense counsel had told the court she and defendant were "debating whether he wants to testify or not." After discussion of the admissibility of defendant's prior convictions should he testify, counsel said defendant "is now asking to address the Court without [the prosecutor] in the audience." The court asked whether "it deals with your relationship between you and your attorney," defendant responded affirmatively, and the court excused the prosecutor. Defendant opened the closed hearing by telling the court counsel continued to act unprofessionally. The immediate impetus for the hearing was counsel's snatching a pen from defendant's hand and calling him an "idiot," at least according to defendant's account of the events. Defendant was concerned that defense counsel continued to get angry and use foul language, and he was upset that she refused to conduct the defense in the manner he preferred. He said she had threatened she would give him a "lackluster defense."

Counsel acknowledged becoming "frustrated" with defendant, but she denied ever saying she would provide a lackluster defense. Counsel explained that defendant "wants to run the defense" and "tell me what to do."

The trial court told defendant it believed, based on its observations during trial, counsel had "done everything that an attorney can do considering the kind of evidence that the prosecution has in your case." The court explained to defendant the various tactical issues involved in his case and defense counsel's resolution of those issues, focusing in particular on defendant's desire to testify in his own defense. It was only at the conclusion of the court's discussion that it remarked, "It sounds like you're making a *Marsden* motion. I'm going to deny your motion." Defendant then told the court he would "withdraw taking the stand." When open court resumed, the parties rested.

" 'When a defendant seeks substitution of appointed counsel pursuant to [*Marsden*], "the trial court must permit the defendant to explain the basis of his contention and to relate specific instances of inadequate performance. A defendant is entitled to relief if the record clearly shows that the appointed counsel is not providing adequate representation or that defendant and counsel have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result." ' [Citation.] 'A trial court should grant a defendant's *Marsden* motion only when the defendant has made "a substantial showing that failure to order substitution is likely to result in constitutionally inadequate representation." ' [Citation.] [¶] 'We review the denial of a *Marsden* motion for abuse of discretion.' [Citation.] 'Denial is not an abuse of discretion "unless the defendant has shown that a failure to replace counsel would substantially impair the defendant's right to assistance of counsel." ' " (*People v. Streeter* (2012) 54 Cal.4th 205, 230.)

Defendant contends the July 7 *Marsden* request was improperly denied because in doing so the trial court "relied in large measure on its knowledge of counsel's reputation." We find no support in the record for the premise of defendant's claim. As discussed above, the trial court rejected the *Marsden* request because, after hearing from both defendant and counsel, it concluded the disagreements between them had not

8

reached a level of hostility that would impair counsel's representation. In doing so, the court cited the proper legal standard, which it had applied in granting an earlier *Marsden* request by defendant, and expressly noted that relations between defendant and his attorney had not reached a sufficient level of discord to justify substitution. Although the court mentioned counsel's experience and reputation, these were cited not as a reason for denying the *Marsden* request but rather as an attempt to mollify defendant's dissatisfaction with counsel.

In arguing error, defendant relies on *People v. Hill* (1983) 148 Cal.App.3d 744, in which the trial court summarily denied a *Marsden* request on the basis of off-the-record discussions with the defense attorney, prior attorneys for defendant, and the director of the private defender program. The court said it was denying the request because it had "confidence" in defense counsel and believed no attorney would give defendant different advice on the issues in dispute. (*Hill*, at p. 750.) The Court of Appeal found error because the trial court improperly relied on its prior experience with the attorney rather than inquiring from counsel in the hearing about the various issues raised by defendant in seeking new counsel. (*Id.* at pp. 753–755.)

The situation here was quite different. Most important, the trial court did not deny the motion summarily, on the basis of its prior experience. Instead, the court gave defendant a full opportunity to express his concerns, asked defense counsel to respond, and denied the motion on the basis of its conclusions about the relationship between defendant and counsel, based on the evidence presented during the *Marsden* hearing. As noted, its comments about counsel's reputation were not made to justify its ruling on the *Marsden* request but in an effort to reconcile defendant with his attorney.

Defendant contends the trial court erred in handling the October 3 hearing because it failed to inquire adequately into his relations with counsel. We find no violation of *Marsden* for two reasons. First, there is no indication defendant had made a formal request to replace counsel, thereby triggering the *Marsden* requirements. A trial court's duties under *Marsden* do not accrue unless "there is 'at least some clear indication by defendant,' either personally or through his current counsel, that defendant 'wants a

9

substitute attorney.' " (*People v. Sanchez* (2011) 53 Cal.4th 80, 90 (*Sanchez*).)  In *Sanchez,* the Supreme Court disapproved earlier cases holding that *Marsden* duties can be triggered by "something less than a clear indication" that the defendant wanted a new attorney.[4]  (*Sanchez*, at p. 90, fn. 3.)

The October 3 hearing occurred as a result of defendant's displeasure when his attorney took a pen from his hand.  Despite his evident dissatisfaction with counsel, defendant did not mention replacing her.  That issue was not raised until the end of the hearing, and it was raised by the court rather than by defendant or his attorney.  Further, there would have been little point in requesting new counsel at that stage of the trial, at the close of evidence.  Because there is no clear indication in the record defendant wanted a new attorney, the trial court was under no duty to conduct a *Marsden* inquiry.

Even if the *Marsden* duties had accrued, we would find the court's conduct adequate.  The trial court gave defendant an opportunity to air his grievances, asked defense counsel to respond, and evaluated the information provided.  Defendant's claims of conflict were well explored.  While it was clear the tension of the trial had strained relations between defendant and counsel, a lack of trust or difficulty in getting along do not alone justify appointing substitute counsel.  (*People v. Jackson* (2009) 45 Cal.4th 662, 688.)  Because there is no indication in the record either of inadequate representation or " ' "such an irreconcilable conflict that ineffective representation is likely to result," ' " (*People v. Streeter, supra,* 54 Cal.4th at p. 230), we find no abuse of discretion.

## D.  *Defendant's Prior Convictions*

Defendant contends his admission of his prior felony convictions was not knowing and voluntary and he did not admit all the elements of a prior prison term enhancement.

The information alleged defendant had been convicted of second degree robbery on June 14, 2007, which qualified as a serious felony conviction and a prior strike

---

[4] One of the cases expressly disapproved by *Sanchez*, *People v. Eastman* (2007) 146 Cal.App.4th 688, is cited as authority in defendant's opening brief without acknowledgement of its disapproved status.

conviction. In addition, it alleged defendant had four prior prison term convictions for second degree burglary, all on July 21, 2008.

At a hearing a week before trial, prior to addressing motions in limine, the court discussed the alleged prior convictions. The court noted defendant had been "convicted of a robbery in 2007" and explained the conviction's potential effect on his sentence. In the course of the discussion, defendant acknowledged having read section 213, subdivision (b), the statute governing robbery sentencing, causing the court to respond, "You've been doing your homework, then." The court then noted "they say there's four prior convictions for second-degree burglary, and in each of those it says you went to prison" and explained "that could add possibly one more year to your sentence." In concluding, the court reviewed the possible sentences defendant could receive in connection with each count and enhancement allegation.

During subsequent argument of a motion in limine, the prosecutor asked that evidence of the prior felony convictions be admitted to prove the felon-in-possession count. Defendant thereafter admitted "the prior convictions" solely for "the purpose of sanitizing [section] 12021." He declined to admit the convictions "for all purposes," deferring a decision whether to admit any or all of the prior convictions for purposes of the sentencing enhancements.

During jury deliberations, the court raised the issue of trial on the prior convictions. Defendant waived jury trial on the convictions, but he declined to decide whether he would admit them.

After notification the jury had reached a verdict, the court attempted to schedule a trial on defendant's prior convictions. During a discussion of dates, defense counsel told the court defendant would admit the convictions. Without reviewing the specific details of the alleged prior convictions, the court explained to defendant, "The court trial will be where [the prosecutor] proves—tries to prove beyond a reasonable doubt whether or not you are the person who suffered the prior for robbery, and there's four second-degree burglaries that you went to prison on. He's provided me with some documents."

11

Defendant agreed to admit the prior convictions, saying, "I just don't see how I can beat a rap sheet." The court then found a knowing and voluntary waiver of his trial right.

The court ultimately imposed a sentence enhancement on the basis of the prior strike/serious felony conviction, but it stayed sentence on the felon-in-possession count and declined to increase defendant's sentence on the basis of the prior prison terms.

Disregarding the events at the pretrial hearing, defendant argues he could not have given an informed waiver of his right to trial on the prior robbery conviction because neither the court nor counsel identified the date or court of the conviction, nor did they inform defendant that he was admitting a strike and serious felony conviction. In fact, at the pretrial hearing the court did review with defendant the year, if not the specific date, of the robbery conviction and explained to defendant the impact on sentencing of the conviction, using both terms "strike" and "serious felony." Because we evaluate the informed nature of a defendant's waiver on the basis of the entire record, taking into consideration defendant's prior experience with the criminal justice system (*People v. Mosby* (2004) 33 Cal.4th 353, 365), the discussions from the earlier hearing can be considered to demonstrate defendant was aware of the nature and implications of his admission. Although, as defendant notes, the court did not specify the exact date or court of the conviction, no case holds this level of detail to be necessary. There is no reason to believe defendant would have admitted having been convicted of robbery in 2007 if, in fact, he was not convicted of robbery in that year.

With respect to the prior prison terms allegations, defendant contends his admission was invalid because the court did not specifically describe the convictions and did not ask him to admit the remaining elements of a section 667.5 sentencing enhancement—serving and completing separate prison terms less than five years earlier. (See *People v. Tenner* (1993) 6 Cal.4th 559, 563.)

The validity of the prior prison term admissions is, as a practical matter, moot because the trial court declined to impose a sentence enhancement on the basis of the prior terms. Because the trial court took no action on the basis of defendant's

12

admissions, there is no practical relief we could grant if we found them inadequate. (*Simi Corp. v. Garamendi* (2003) 109 Cal.App.4th 1496, 1503.)

Even if the issue were not moot, we would find the prison term admissions valid and adequate to support imposition of the enhancement. The court referred at the pretrial hearing to "four prior convictions for second-degree burglary" for each of which "you went to prison." Although the court did not mention the date of these convictions, the specificity of four second degree burglary convictions was sufficient to identify them for defendant. His admission of the fact of the convictions and their associate prison terms also constituted an admission of their date of commission, which was pleaded in the information. (See *People v. Ebner* (1966) 64 Cal.2d 297, 303.) The trial court was entitled to infer from these admissions the remaining elements of section 667.5, subdivision (b), that defendant had completed the terms and that they were completed less than five years earlier. Because the convictions dated from 2008, they necessarily were completed less than five years before the 2010 occurrence of the crime. (See *People v. Tenner, supra*, 6 Cal.4th at pp. 565–566.)

## III. DISPOSITION

The judgment of the trial court is affirmed.

_____
Margulies, Acting P.J.

We concur:

_____
Dondero, J.

_____
Banke, J.

13