Filed 10/3/22  P. v. Lopez CA2/6
## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>v.<br><br>PEDRO SANTIAGO LOPEZ,<br><br>  Defendant and Appellant. | 2d Crim. No. B300909<br>(Super. Ct. No. 1500706)<br>(Santa Barbara County) |

In the first trial the jury was unable to reach a verdict on the charge of attempted murder.  (Pen. Code,[1] §§ 187, subd. (a), 664; count 1.)  But the jury found Pedro Santiago Lopez guilty of discharging a firearm at an occupied motor vehicle (§ 246; count 2) and that he personally used a firearm (§ 12022.5, subd. (a)).

The prosecution retried count 1.  The jury found Lopez guilty of attempted murder and that he personally and

_____

[1] All further references are to the Penal Code unless otherwise indicated.

intentionally discharged a firearm causing great bodily injury. (§§ 12022.7, subd. (a), 12022.53, subd. (c).)

The trial court sentenced Lopez to seven years to life on count 1 plus 20 years for the firearm enhancement. On count 2, the court sentenced Lopez to the upper term of seven years plus four years for the firearm enhancement pursuant to section 654.

As to count 2, we strike the firearm enhancement and reverse and remand for sentencing pursuant to changes in the sentencing law. In all other respects, we affirm.

FACTS

On July 21, 2016, John Doe was driving a sport utility vehicle (SUV) with his wife as a passenger. They stopped at a gas station in Santa Maria. As Doe was pulling up to the pump, Lopez was standing in front of him, possibly looking at his cell phone. Doe rolled down his window and asked if he could pass. Lopez did not reply but stared at him in an angry manner. He waived his arm and asked if Doe was in a hurry. Lopez said that as a pedestrian he had the right of way and Doe would have to wait until he moved.

Doe apologized several times. Lopez called Doe a big "pussy" and challenged Doe to a fight. He began to make offensive comments about Doe's wife. Doe's wife threatened to call the police if Lopez did not leave them alone.

Lopez continued to make offensive comments about Doe's wife. Doe got out of his SUV. Doe grabbed Lopez by the shirt and pushed Doe against a column at the gasoline pump. Lopez went to his truck and Doe got into his SUV.

As Doe was turning on the ignition, he saw Lopez pointing a gun at him. A gas station employee also saw Lopez

2

in front of the SUV with a gun in his hand. Lopez shot Doe in the head. Lopez continued to try to shoot, but the gun only shot once. He got into his truck and drove away.

Bystanders called 911. When the police arrived, Doe was still in his SUV. A flap of skin had come off his skull and there was a considerable amount of blood. Jacketing from a bullet was stuck in Doe's forehead. There was a bullet hole in the windshield. Doe was taken by helicopter to the hospital where he spent three days.

The police were able to get a partial license number off Lopez's truck from the gas station's surveillance tapes. They were able to identify Lopez's truck and obtained an arrest warrant for Lopez as well as a search warrant for his home and truck.

In Lopez's home the police found a derringer with two .45-caliber bullets. The bullets had light prime marks on them, consistent with someone pulling the trigger and the primer not going off. A criminalist found the gun did not reliably fire each time the trigger was pulled. The bullets were consistent with fragments found in Doe's head.

DEFENSE

Lopez testified on his own behalf. He said he was walking at a normal pace at the gas station when Doe started yelling at him. Lopez did not get angry or feel disrespected. Doe walked up to him and wanted to start a fight. Lopez tried to calm Doe down. He did not call Doe any names or insult Doe's wife. Doe was taller and heavier that Lopez. Doe threatened to kill Lopez, his wife, and son right there.

Lopez thought about another son who had been murdered in 2010. He did not feel stressed and was not in

3

fear.  Doe was still in his SUV and not leaving.  Lopez could not allow Doe to follow and kill him.  He decided to scare Doe away.

Lopez went to his truck and got his gun out of a locked glove compartment.  He only had one bullet, which he loaded in the gun.  He shot into the SUV where Doe and his wife were seated.  Lopez did not think he would hit Doe nor did he intend to kill him.  Lopez said he was defending himself, his wife, and his son.

Neurologist Robert Sapolsky testified that under stress the amygdala, the part of the brain that controls fear and anxiety, gets stronger, and the frontal cortex, the reasoning part of the brain, gets weaker.  Anger can also have the same result.

Two witnesses testified they have known Lopez for many years and know him as a non-violent family man.

DISCUSSION

I.

*Competency to Stand Trial*

Lopez contends the trial court erred in failing to suspend proceedings and order a second competency exam.

(a) *Procedure*

Defense counsel declared a doubt about Lopez's competence to stand trial.  The trial court suspended proceedings and appointed two doctors to evaluate Lopez.  Defense counsel and the prosecutor stipulated to the report of a single doctor who found Lopez competent to stand trial.

Later Lopez entered a plea of not guilty by reason of insanity.  The court again appointed two doctors to evaluate

4

Lopez. Both doctors found Lopez did not meet the standard of section 1027 for not guilty by reason of insanity.

Fifteen months after Lopez's initial competency evaluation, defense counsel again declared a doubt about Lopez's competency to stand trial. Defense counsel explained that he initially declared a doubt because Lopez was not talking to him, and Lopez's sons described him as not normal when speaking to him on the telephone. Now defense counsel said Lopez is speaking to him, but he did not believe Lopez was being rational.

The trial court held an in camera hearing with only Lopez and his counsel present. Counsel started the hearing by informing the court that Lopez believes the government is out to get him, specifically that the county fiscal department is getting into his file to look at a secret pleading. The court asked Lopez if he talked to his attorney about hiring an expert to testify at trial about his mental state. Lopez complained that he and his counsel did not communicate well. The court explained to Lopez that if he wanted an expert to testify, he would have to agree to a continuance so that one could be appointed. Lopez expressed reluctance to accept further delay, but ultimately agreed.

The trial court found there was no substantial evidence of a change of circumstances that would merit further inquiry. The court did not appoint experts to evaluate Lopez's competence to stand trial for a second time.

Three months later, Lopez's counsel again expressed doubt about Lopez's competence to stand trial. Counsel later told the trial court that he was not pursuing the matter.

5

(b) *Discussion*

Section 1367, subdivision (a) provides in part: "A person shall not be tried or adjudged to punishment . . . while that person is mentally incompetent. A defendant is mentally incompetent for purposes of this chapter if, as a result of a mental health disorder or developmental disability, the defendant is unable to understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in a rational manner."

The defendant has a right to a hearing on his present sanity if he produces substantial evidence that he is incapable of understanding the nature of the proceedings against him or of assisting in his defense. (*People v. Rodas* (2018) 6 Cal.5th 219, 231.) If after a competency hearing the defendant has been found competent to stand trial, the trial court may rely on that finding unless the court is presented with a substantial change of circumstances or with new evidence casting a doubt on that finding. (*Ibid.*)

Here Lopez was found competent to stand trial after a competency hearing. Thereafter Lopez's counsel informed the court that Lopez believes the county government is out to get him. Given that the county was trying to put Lopez in prison for the rest of his life, that hardly seems delusional. Lopez's counsel said Lopez believes the county fiscal department is trying to get into his file and look at a secret pleading. Assuming Lopez believes that, it has nothing to do with Lopez's ability to competently assist in his defense.

The trial court held an in camera hearing with Lopez and his counsel. Nothing Lopez said was delusional. To the contrary, he was able to articulate his position clearly and

6

rationally. He was concerned that the appointment of an expert would delay his trial, as indeed it did. Lopez's counsel did not take the opportunity to question him about the alleged delusions. The court could reasonably conclude there was no substantial evidence of a change in circumstances that would merit further inquiry.

Lopez's counsel did file a subsequent affidavit under section 1368. But counsel later informed the court that he was not pursuing the matter.

Lopez testified in his own defense in two trials. He points to nothing in his testimony that would indicate he was not competent to stand trial.

Lopez's reliance on *People v. Rodas*, *supra*, 6 Cal.5th 219, is misplaced. The defendant was found to be incompetent to stand trial. Medication, however, restored him to competence. The defendant's counsel requested a competency evaluation on the ground that the defendant had stopped taking his medication and had begun communicating incoherently with counsel. The court conducted a brief colloquy with defendant during which defendant was able to identify the charges against him and expressed a willingness to go to trial and cooperate with counsel. Against counsel's advice, the defendant testified on his own behalf. The testimony was incoherent, and the court struck it as irrelevant. Our Supreme Court concluded the trial court erred in failing to suspend the proceedings and order a formal competency inquiry. The court reasoned that where the defendant stopped taking medication that restored him to competency and again displayed symptoms of incompetency, there was substantial evidence of a

7

change of circumstances that required a formal inquiry. (*Id*. at p. 235.)

The facts here are not remotely similar to those in *Rodas*. Lopez was never found to be incompetent. There was no change of circumstances similar to stopping medication that had restored competence, and Lopez's testimony in two trials showed he was competent. If anything, *Rodas* illustrates why the trial court did not err here.

## II.

### *Negligent Discharge of a Firearm*

Lopez contends the trial court erred in failing to instruct sua sponte on the lesser included offense of negligent discharge of a firearm.

Lopez was found guilty of violating section 246, willful discharge of a firearm at an occupied motor vehicle. Section 246.3, willfully discharging a firearm in a grossly negligent manner, is a better included offense of section 246. (*People v. Bell* (2019) 7 Cal.5th 70, 108.) An instruction on a lesser included offense is required where there is substantial evidence that the defendant is guilty of only the lesser offense and not the greater offense. (*Ibid*.)

Here the only evidence is that Lopez intentionally fired into an occupied motor vehicle. That is a violation of section 246, the greater offense. There is no evidence Lopez fired randomly or into the air. (See *People v. Bell, supra,* 7 Cal.5th at pp. 109-110 [To find defendant guilty of violating section 246.3, and not section 246, the jury would have to find the defendant's shots were not aimed at or in close proximity to the victim's truck. There was no evidence defendant fired

8

aimlessly or into the air].)  There was no substantial evidence to support an instruction on section 246.3.

## III.

### *Prosecutorial Misconduct*

Lopez contends the prosecutor committed misconduct in the second trial on attempted murder.

### (a) *Beltran* Violation

In addition to an instruction on attempted murder (CALCRIM No. 600), the trial court instructed on the lesser included offense of attempted voluntary manslaughter based on heat of passion (CALCRIM No. 603) and imperfect self-defense (CALCRIM No. 604).

In *People v. Beltran* (2013) 56 Cal.4th 935, our Supreme Court rejected the theory that the heat of passion necessary for voluntary manslaughter must be of a kind that would cause a person of ordinary disposition to kill.  (*Id*. at p. 949.)  Instead, the correct standard is that the accused must be "disturbed by passion to such an extent as would cause the ordinarily reasonable person of average disposition to act rashly and without deliberation and reflection, and from such passion rather than from judgment."  (*Id*. at p. 942, quoting *People v. Barton* (1995) 12 Cal.4th 186, 201.)

The prosecutor began his argument to the jury citing the correct standard for manslaughter based on heat of passion. But then he said:  "An average person of average disposition does not grab a gun and shoot somebody who's sitting at the steering wheel.  A person of average disposition does not approach the guy that's been shot and pull that trigger for another time.  A person of average disposition does not go around and continue that course of conduct and try to fire

9

another shot at a different angle. A person of average disposition acts with deliberation. They run away. They act proportionately. They don't do this. Society doesn't allow us to act with our own standard where somebody can grab a gun in a crowded gas station and shoot somebody that has no weapons that's sitting in their car and then proceed to try to shoot him two more times."

Defense counsel corrected the prosecutor, stating: "Again, heat of passion. So heat of passion reduces an attempted murder to attempted voluntary manslaughter. And here is where the prosecutor was talking about a person of average disposition, right? The provocation would have caused an ordinary person of average disposition to act rashly and without due deliberation. He was saying the person of average disposition would get out their gun and shoot, or the person of average disposition would maybe even display a gun. That's not what the instruction says. The instruction says to act rashly and without due deliberation from passion rather than judgment."

In rebuttal the prosecution said: "A person of average disposition – remember, it's a person of average disposition standard – would call the police, would leave the scene, would report John Doe's actions. A person of average disposition would not see somebody walk away, get in their car, and pull a gun and shoot them. A person of average disposition would deliberate and not act in that sort of manner. They would not try to shoot the person again two more times."

The jury was instructed with CALCRIM No. 603, stating in part: "It is not enough that the defendant simply was provoked. The defendant is not allowed to set up [his] own

standard of conduct.  You must decide whether the defendant was provoked and whether the provocation was sufficient.  In deciding whether the provocation was sufficient, consider whether a person of average disposition, in the same situation and knowing the same facts, would have reacted from passion rather than judgment."

A prosecutor who misstates the law commits misconduct. (*People v. Hill* (1998) 17 Cal.4th 800, 832.)  Here, the prosecutor initially correctly stated the law.  But then he improperly argued that the heat of passion necessary for voluntary manslaughter must be of a kind that would cause a person of ordinary disposition to attempt to kill.

But the trial court correctly instructed the jury on the standard for manslaughter based on heat of passion.  The court also instructed the jury that if anything the attorneys said conflicted with the instructions, it had to follow the instructions.  (CALCRIM No. 200.)  When argument runs counter to instructions given to the jury, we will ordinarily conclude the jury followed the instructions and disregarded the argument.  (*People v. Osband* (1996) 13 Cal.4th 622, 717.)  The prosecution's misstatement of the law in argument to the jury was harmless.

(b) Order of Deliberations

Lopez contends the prosecutor committed misconduct by telling the jury it had to decide whether he is guilty of attempted murder before going on to consider a lesser included offense.

Here the trial court instructed the jury with CALCRIM No. 3517.  That instruction states in part:  "It is up to you to decide the order in which you consider each crime and the

11

relevant evidence, but I can accept a verdict of guilty of a lesser crime only if you have found the defendant not guilty of the corresponding greater crime."

The instruction – that it is up to the jury to decide the order in which it considers each crime and evidence – is given because the order does not matter. Thus, it does not matter if the jury considered the attempted murder first. Moreover, when there is a conflict between argument and instructions, the instructions prevail. (*People v. Osband*, *supra*, 13 Cal.4th at p. 717; CALCRIM No. 200.) Any misconduct was harmless.

## IV.

### *Unanimity Instruction*

Lopez contends the trial court erred in failing sua sponte to give a unanimity instruction in both trials.

In the first trial, Lopez was found guilty of discharging a firearm at an occupied motor vehicle. (§ 246.) Although the undisputed evidence is that the gun fired only once, Lopez argues that a "discharge" does not require the actual firing of a bullet. It can be found where the defendant simply aims the gun and pulls the trigger. (*People v. Grandy* (2006) 144 Cal.App.4th 33, 44-45 [discharge of a firearm within the meaning of section 12022.53, subdivision (c)].)

A unanimity instruction is required where multiple acts are placed before a jury each of which is a separate chargeable offense. (*People v. Robbins* (1989) 209 Cal.App.3d 261, 265-266.) But there is an exception to the rule where a series of acts are so closely connected in time that they form part of one transaction. (*Id*. at p. 266.)

Lopez argues that there was evidence he unsuccessfully attempted to shoot multiple times after the initial shot that

12

struck Doe. He posits some jurors could have separated the initial shot from the subsequent unsuccessful attempts, finding the first shot was fired in self-defense, but that the other attempts at shooting were not. Other jurors might have based their verdict on the first shot.

But the entire shooting incident took only a few seconds. It is beyond far-fetched to believe that a juror would find Lopez had different states of mind between pulls of the trigger. The incident falls squarely within the single transaction exception.

Contrary to Lopez's assertion, the prosecution did not argue that there were separate courses of conduct. In context, the prosecution was simply pointing to the acts that continued the single course of conduct. But, even if the prosecutor's argument could be construed as separating Lopez's acts into separate courses of conduct, the error would be harmless by any standard. No reasonable juror would believe the entire shooting incident, lasting only a few seconds, constituted anything but a single course of conduct.

V.

*Section 12022.5 Enhancement Stricken as to Count 2*

Lopez argues the section 12022.5, subdivision (a) enhancement must be stricken as to count 2. The Attorney General concedes the issue.

The jury found Lopez guilty of count 2, discharging a firearm at an occupied motor vehicle. Section 12022.5, subdivision (a) provides that the enhancement does not apply if use of a firearm is an element of the offense. The enhancement must be stricken.

13

## VI.

### *Resentence Under Change of Law*

Lopez contends he is entitled to be resentenced under changes in law that occurred after he was sentenced. The Attorney General concedes the issue.

The changes in law only affect Lopez's sentence on count 2, discharging a firearm at an occupied motor vehicle. (§ 246.) The trial court sentenced Lopez to the upper term of seven years plus a firearm enhancement pursuant to section 12022.5, subdivision (a), stayed pursuant to section 654. As explained above, we must strike the firearm enhancement, leaving the stayed upper seven-year term for violating section 246.

At the time Lopez was sentenced, section 654 required the trial court to impose the longest potential term of imprisonment. An amendment to section 654 deleted that requirement. (Stats. 2021, ch. 441, § 1.) Section 1170 was amended by adding subdivision (b)(6)(A), making the lower term the presumptive sentence where the defendant has experienced psychological, physical, or childhood trauma. (Stats. 2021, ch. 695, § 5.3.) Lopez claims he suffered such trauma when he came to the United States as an unaccompanied minor and when one of his sons was murdered.

Because Lopez's case is not yet final, he is entitled to the advantage given by the change in law. (*In re Estrada* (1965) 63 Cal.2d. 740.)

## VII.

### *Fines and Fees*

Lopez contends the trial court violated due process by imposing fines and fees without a hearing on his ability to pay.

14

At sentencing, Lopez objected to the imposition of fines and fees unless the prosecution affirmatively proved that he had the ability to pay. The trial court overruled the objection and imposed a $10,000 restitution fine (§ 12022.4, subd. (b)), an $80 court security fee (§ 1465.8), and a $60 criminal conviction fee (Gov. Code, § 70373).

Lopez relies on *People v. Dueñas* (2019) 30 Cal.App.5th 1157. Dueñas pled no contest to driving with a suspended license. The trial court placed her on probation and imposed various fines and fees. The Court of Appeal, relying in part on the Magna Carta, held that due process required a hearing on the defendant's ability to pay.

*Dueñas'* reception has been mixed. Some courts have concluded that *Dueñas* was correctly decided. (See, e.g., *People v. Santos* (2019) 38 Cal.App.5th 923, 927, fn. 2, but see dis. opn. of Elia, J. at pp. 935-940.) Other courts have held that *Dueñas* improperly relied on due process, and the correct analysis is under the Eighth Amendment's excessive fines clause. (See, e.g., *People v. Kopp* (2019) 38 Cal.App.5th 47, 96-97.) The question is currently before our Supreme Court. (*Ibid.*, review granted Nov. 13, 2019, S257844.) We conclude the Eighth Amendment analysis, and not due process, is correct.

Lopez is in essence contending that the fines are excessive because he lacks the ability to pay. The appropriate challenge is under the Eighth Amendment's ban on excessive fines. Where an explicit textual source of constitutional protection against an alleged harm exists, that Amendment must be the guide for analyzing those claims. (*Graham v. Connor* (1989) 490 U.S. 386, 395.)

15

The court considers four factors in determining whether a fine is disproportionate: (1) the defendant's culpability, (2) the relationship between the harm and the penalty, (3) penalties imposed by similar statutes, and (4) the defendant's ability to pay. (*United States v. Bajakajian* (1998) 524 U.S. 321, 337-338; *People ex rel. Lockyer v. R.J. Reynolds Tobacco Co.* (2005) 37 Cal.4th 707, 728.) Even under a due process analysis, there is no reason why the court should be confined to considering only the defendant's ability to pay. The court should consider all factors.

First, as to culpability, Lopez shot Doe in the head. That the shot did not kill Doe is simply fortuitous.

Second, the relationship between the harm and the penalty is appropriate. Not only did Doe spend three days in the hospital, but Doe is left with psychological trauma of having been shot by a complete stranger. Doe's medical costs alone certainly far exceed the amount of fines and fees.

Third, we are unaware of any similar statutes imposing such penalties.

Fourth, although Lopez's ability to pay will be greatly restricted, he will still have the ability to earn some money in prison. (See *People v. Johnson* (2019) 35 Cal.App.5th 134, 139 [ability to pay includes defendant's ability to obtain prison wages].) Even considering Lopez's restricted ability to earn money in prison, the first two factors alone are more than sufficient to support the imposition of the fees and fines imposed here.

## DISPOSITION

The enhancement pursuant to section 12022.5, subdivision (a) is stricken as to count 2. The matter is reversed

16

and remanded for resentencing on count 2 pursuant to changes in sections 654 and 1170.  In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED.


GILBERT, P. J.


We concur:



YEGAN, J.



PERREN, J.*

_____

* Retired Associate Justice of the Court of Appeal, Second Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

YEGAN, J., Concurring and Dissenting:

I concur with the majority opinion except insofar as it orders a reversal and a remand for resentencing as to count two. The defense theory is based upon alleged physical, psychological, or childhood trauma as a mitigating factor. While appellant has some mental deficiency, reversal and remand here is meaningless. The sentence on count one, which we affirm, is seven years to life plus 20 years for use of a firearm. Whether or not appellant receives a mitigated sentence as to count two will make no difference as to when parole is granted, if at all. In this situation, I would exercise Penal Code section 1260 discretion, reduce the seven-year sentence to the lower three-year term, and order it to be served concurrently with count one.

NOT TO BE PUBLISHED.

YEGAN, J.

John F. McGregor, Judge

Superior Court County of Santa Barbara

_____

Caneel C. Fraser, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Kenneth C. Byrne and David A. Wildman, Deputy Attorneys General, for Plaintiff and Respondent.