Filed 11/3/22  P. v. Rivota CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D079634 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. FVI18003040) |
| ALBERT RIVOTA III, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Bernardino County, Tony Raphael, Judge.  Affirmed.

Barbara A. Smith, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Senior Assistant Attorney General, Arlene A. Sevidal, Randall D. Einhorn, and Susan Elizabeth Miller, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Albert Rivota III of attempted premeditated murder (Pen. Code[1], §§ 664/187, subd. (a), count 1) infliction of injury upon a spouse or cohabitant (§ 273.5, subd. (a), count 2). He contends on appeal that both counts must be reversed because the trial court failed to instruct the jury with a unanimity instruction and did not require the prosecutor to elect the events comprising either count. The People contend the trial court did not have a sua sponte duty to instruct the jury on unanimity but, even if the court erred, the error was invited or harmless. We conclude the trial court erred by not giving the instruction, but the error was harmless beyond a reasonable doubt. We, therefore, affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

A.      Evidence Regarding the Charged Crimes

On October 14, 2018, Lisa E. witnessed Rivota and the victim arguing in the middle of the street. Rivota and the victim yelled in each other's faces and exchanged slaps and punches. At some point, Rivota and the victim separated, and the victim went to the home of Thomas V., an elderly neighbor.

Shortly after, a black SUV pulled up at the side of Thomas's house. The victim approached the vehicle and tried to get inside. Rivota rushed the van angrily, and after he spoke with the driver and passenger, the SUV drove off. The victim tried to run away, but Rivota immediately grabbed her and started beating her with punches and kicks. The victim freed herself and ran up the stairs to Thomas's house.

---

1      Further statutory references are to the Penal Code.

The victim then went into the bathroom in Thomas's house to get cleaned up. Thomas noticed that the left side of the victim's head was bloody. After four to five minutes, the victim walked out the front door again. Rivota, who had been waiting for the victim at the front door, hit her in the face with his fist. After the victim fell to the ground, Rivota started kicking, hitting, and stabbing the victim with a knife. Rivota stabbed the victim several times. Thomas tried to stop Rivota by swinging a baseball bat at him.

Thomas's and Lisa's testimony differed slightly about what happened next. Thomas testified that Rivota and the victim ran into an alley and Rivota continued stabbing her. Thomas also said someone other than himself helped the victim back into his house. Lisa, on the other hand, testified that both Thomas and Rivota's sister showed up and helped the victim into Thomas's house and away from Rivota. Thomas testified that Rivota remained at the scene afterward , but Lisa testified that Rivota fled.

B.      Conferences Regarding Jury Instructions

During a jury instruction conference, the court and counsel discussed a proposed unanimity instruction. The court observed that the prosecution alleged "three different rounds of violence in this case." Those incidents included: (1) Rivota and the victim's "mutual combat" in the middle of the street; (2) Rivota's subsequent "beating" of the victim after the SUV left; and (3) Rivota's eventual "stabbing" of the victim with a knife after she had cleaned up her wounds in Thomas's house. In the court's view, there was "some sort of a temporal separation" and an "escalation" of the violence between the second and third incidents.

Based on this narrative, the court saw no need for a unanimity instruction on count 1 for attempted murder. The court reasoned that a unanimity instruction is not required when the acts are "so closely connected as to form part of one transaction." Regarding count 2 for corporal injury, on the other hand, the court was inclined to give a unanimity instruction because there potentially was "a little bit of a separation" between two acts giving rise to the crime: (1) the mutual combat in the middle of the street; and (2) the "serious assault-type conduct" occurring near the SUV. The court noted, however, that this approach would require telling the jury the basis for the two separately charged crimes, or else the jury might consider conduct before the stabbing for the attempted murder.

The prosecutor objected to the unanimity instruction, saying the mutual combat in the street was "just kind of a precursor" for the actual injury for count 2 that "occurred at the SUV." The prosecutor further argued that the two violent acts by the SUV and the home "are completely separate." The court noted that the prosecutor's position differed from her prior position in response to Rivota's section 1118.1 motion for acquittal. Nevertheless, the court agreed a unanimity instruction may not be needed for count 2 either, so long as the jury was told the specific basis for count 2.

Defense counsel responded that a unanimity instruction would be helpful to the jury. However, the defense requested to remove language "delineating the specific area of conduct and where it applies as far as the counts," arguing that this risks "guiding the jury into deciding and understanding, interpreting the evidence and testimony that they do hear." The court acknowledged the defense's concern and again considered instructing on unanimity for the two potential factual bases for count 2 (the mutual combat and the beating

4

near the SUV). But because the Information did not elect the specific conduct giving rise to the different counts, the court maintained it needed to instruct the jury of the "demarcation" arising from the "temporal separation" between the conduct alleged for count 1 versus the conduct for count 2.

During a recess, the court discussed the unanimity instruction further in an off-the-record chambers conference. After returning from the recess, the court summarized the prosecutor's position that the entire incident was "a continuous course of conduct in support of both counts." Therefore, the prosecutor believed there would be "no need for the court to provide the jury with a temporal demarcation as to what conduct supports each count," nor any "need to provide a unanimity instruction." The prosecutor confirmed this was her position. Defense counsel agreed. Accordingly, the court decided not to instruct on unanimity. The parties then stipulated to the instructions the court intended to give, without waiving any prior objections made on the record.

The court instructed the jury without a unanimity instruction. Just before counsel made their closing arguments, the court held a final discussion with counsel to confirm their agreement regarding the unanimity instruction. The court reiterated that it would not instruct on unanimity, as neither side requested it given the People's position that there was "a single transaction or a continuous course of conduct that formed the basis for the two counts." Both defense counsel and the prosecutor expressly agreed with the court's decision.

5

DISCUSSION

Rivota contends the trial court prejudicially erred in failing to give the unanimity instruction under CALCRIM No. 3500 because there "was a danger that the jury may amalgamate disparate acts in order to convict the defendant of an offense charged." He specifically argues that with no unanimity instruction, and no ruling from the court that the prosecutor needed to elect, the court improperly allowed the prosecutor to argue that every segment of the events—including the initial "mutual combat" confrontation in the street— could support the charge for attempted premeditated murder. The People claim that Rivota invited any error because he agreed the unanimity instruction need not be given. The People further argue that, in any event, Rivota's claim has no merit or was harmless. Although we find Rivota's contention reviewable, we conclude any error by the trial court was harmless.

A.      Rivota Did Not Invite Error

Where a party's conduct "induces the commission of error," the doctrine of invited error estops the party from asserting the error as a ground for reversal. (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 403.) The purpose of the invited error doctrine "is to prevent a party from misleading the trial court and then profiting therefrom in the appellate court." (*Ibid.*) Invited error may preclude an argument that an instruction was erroneously omitted if defense counsel's conduct shows he or she made a "conscious, deliberate tactical choice to forego a particular instruction." (*People v. Wader* (1993) 5 Cal.4th 610, 657–658 (internal quotation omitted).)

6

However, because important rights of the accused are at stake, it must be clear that counsel acted for tactical reasons and not out of ignorance or mistake. (*People v. Wickersham* (1982) 32 Cal.3d 307, 330.) Counsel's "mere agreement that the instruction was not relevant" does not preclude a defendant from raising the issue on appeal, as a trial court should give the instruction sua sponte where the circumstances of the case so dictate. (*People v. Carrera* (1989) 49 Cal.3d 291, 311, fn. 8.)

Although defense counsel here initially objected to a modified portion of the proposed unanimity instruction, defense counsel otherwise believed that an unmodified unanimity instruction would be "helpful" for count 2. The People also correctly note that defense counsel consciously chose to forgo the unanimity instruction. But unlike in the cases the People rely on—*People v. Lara* (1994) 30 Cal.App.4th 658, 673 and *People v. Hughes* (2002) 27 Cal.4th 287, 345-346—the instruction was not withdrawn at Rivota's behest. Instead, the defense counsel was willing to forgo the instruction because the prosecutor had just explained her position that both counts were based on a single continuous course of conduct. This new position led the court and both parties to agree that the unanimity instruction would not be necessary. Such "mere agreement" by itself does not reflect the type of conscious and deliberate tactical choice to forego the unanimity instruction needed to conclude that defense counsel invited the alleged instructional error. (*See People. v. Carrera*, *supra*, 49 Cal.3d at p. 311, fn. 8.) Accordingly, the issue is reviewable on appeal.

B.  The Trial Court Erred by Failing to Give a Unanimity Instruction Sua Sponte

Rivota argues the trial court committed reversible error when it failed to deliver a unanimity instruction to the jury. Specifically, he asserts a unanimity instruction was required because the jury was required to agree on which of three separately alleged acts of violent conduct gave rise to the alleged counts. "[A]ssertions of instructional error are reviewed de novo." (*People v. Shaw* (2002) 97 Cal.App.4th 833, 838.) Whether or not the trial court should have given a "particular instruction in any particular case entails the resolution of a mixed question of law and fact," which is "predominantly legal." (*People v. Waidla* (2000) 22 Cal.4th 690, 733.) As such, it should be examined without deference. (*Ibid.*)

A jury verdict must be unanimous in a criminal case. (Cal. Const., art. I, § 16; *People v. Russo* (2001) 25 Cal.4th 1124, 1132.) "Additionally, the jury must agree unanimously the defendant is guilty of a *specific* crime." (*Russo, supra*, at p. 1132.) Therefore, when the evidence suggests more than one discrete crime, either the prosecution must elect among the crimes or the court must require the jury to agree on the same criminal act. (*Ibid.*) The unanimity requirement is designed "to eliminate the danger that the defendant will be convicted even though there is no single offense which all the jurors agree the defendant committed." (*Ibid.*) On the other hand, where the evidence shows only a single discrete crime but leaves room for disagreement as to exactly how that crime was committed or what the defendant's precise role was, the jury need not unanimously

8

agree on the basis or the "theory" whereby the defendant is guilty. (*See Ibid*.; *People v. Jenkins* (2000) 22 Cal.4th 900, 1024-1026.)

Here, there was a risk that the jury could divide on multiple discrete crimes for either of the two counts. The witnesses at trial testified they saw Rivota commit three separate violent acts toward the victim: (1) mutual combat between Rivota and the victim involving slapping and punching in the middle of the street; (2) Rivota's beating the victim in an alley where an SUV had been; and (3) Rivota's stabbing the victim outside of Thomas V.'s house. The Information did not select the particular acts upon which it relied for the different counts.

Therefore, based on the evidentiary record, there was a risk the jury could split on count 1 for attempted murder between some jurors finding Rivota committed the second act only and some jurors finding he committed the third act only. These were discrete acts, as even the prosecutor described a "lengthy" period of time between the two. Concerned about the possibility that the jury would conflate the two acts, the court warned before closing arguments that they "have to tell the jury what's the basis of each crime," or else the jury "could consider conduct before by the SUV for the attempted murder."

Likewise, the jury could have split on count 2 for infliction of corporal injury between the first and the second acts.[2] In fact, the court initially observed that the first two

---

[2]    Prior to instructing the jury, the court dismissed the "use of a deadly or dangerous weapon" allegation from count 2 pursuant to Rivota's motion to dismiss under section 1118.1. Therefore, count 2 could not be based on the third act (the stabbing incident), which was the only incident involving a knife.

9

acts were sufficiently separate in time that a unanimity instruction would be warranted for count 2. Although the prosecutor assured the court in chambers that the People were not relying on the "mutual combat in the street" incident as part of its case for count 2, the prosecutor ultimately highlighted this incident during her closing arguments. Further, the prosecutor's closing arguments repeatedly referenced the stabbing as a basis for count 2.

Although the court ultimately declined to give the unanimity instruction based on an agreement between counsel that the entire event was a continuous-course-of-conduct in support of both counts, this does not mean there was no error in the instructions. The court should instruct on unanimity when the circumstances so warrant. (*People v. Davis* (2005) 36 Cal.4th 510, 561.) Moreover, the "continuous course of conduct" principle is not an exception to the requirement of a unanimity instruction. (*People v. Lueth* (2012) 206 Cal.App.4th 189, 196.) Instead, when this principle applies, a unanimity instruction may still be required, but the failure to give one may be harmless. (*Ibid.*) Accordingly, and notwithstanding the parties' agreement regarding the continuous course of conduct, the court erred in this case by failing to give a unanimity instruction.

C.    The Court's Error in Failing to Give a Unanimity Instruction Was Harmless

Failure to give a unanimity instruction is governed by the harmless error standard of *Chapman v. California* (1967) 386 U.S. 18), which requires the error to be harmless beyond a reasonable doubt. (*People v. Deletto* (1983) 147 Cal.App.3d 458, 471.) "Where the record provides no rational basis, by way of argument or evidence, for the jury to distinguish between the various acts, and the jury must have believed beyond a reasonable

10

doubt that defendant committed all acts if he committed any, the failure to give a unanimity instruction is harmless." (*People v. Thompson* (1995) 36 Cal.App.4th 843, 853.)

The failure to give a unanimity instruction is harmless where the defendant offered the same defense to all criminal acts, and "the jury's verdict implies that it did not believe the only defense offered." (*People. v. Hernandez* (2013) 217 Cal.App.4th 559, 577.) For example, in *People v. Wolfe* (2003) 114 Cal.App.4th 177, a failure to give a unanimity instruction was harmless where the defendant presented "a unitary defense" that he had no dominion or control over any of the firearms at issue. (*Id.* at p. 188.) By contrast, in *People v. Diedrich* (1982) 31 Cal.3d 263, a failure to instruct on unanimity was prejudicial, because the defendant made a "simple denial" for one count but "explained" the other count. (*Id.* at p. 283.)

The error in this case was harmless beyond a reasonable doubt because Rivota offered the same defense to both charges: he was not the one who committed the crimes. Specifically, Rivota argued someone from the SUV beat and stabbed the victim. On appeal, Rivota points out that defense counsel attacked the credibility of the different witnesses for each act in different ways, but this makes no difference. While it is true that defense counsel treated Lisa E.'s identification of Rivota as a fabrication and attributed Thomas V.'s identification of Rivota as a mistake during the chaos, both arguments were designed to deny that Rivota committed the acts at all. The verdict shows the jury believed that Rivota committed at least one violent act during incident, which indicates that the jury "resolved the basic credibility dispute against the defendant." (*See People. v. Thompson*, *supra*, 36 Cal.App.4th at p. 853.)

11

Rivota's other arguments regarding prejudice are not persuasive. Rivota refers to various "extraneous but prejudicial matters" in the record, such as the portrayal of the death of "the heroic old man," various "lurid statements" attributed to Rivota which Rivota claims are embellishments, and the prosecutor's framing the case as "a morality play" where the victim finally "fought back" against regular beatings by Rivota. But Rivota cites no authorities—nor are we aware of any authorities—suggesting that such statements and characterizations are unduly prejudicial. Rivota also points to the length of the jury deliberations and requests to rehear testimony as indications that the jury was conflicted. (*See People v. Filson* (1994) 22 Cal.App.4th 1841, 1852; *People. v. Thompson*, *supra*, 36 Cal.App.4th at p. 854.) But the jury's lengthy deliberations and requesting to rehear testimony simply suggests the jury acted dutifully and diligently. Nothing in the record suggests a conflict among the jurors. By contrast, the jury in *Filson* reported a deadlock on two out of three counts, and the jury in *Thompson* initially reported an impasse on all counts. (*Filson, supra*, at pp. 1847-1848; *Thompson, supra*, at pp. 849-850.)

Accordingly, there was no rational basis for the jury to distinguish between the alleged acts. The jury's verdict implies that it did not believe the unitary defense Rivota offered for both counts that he did not commit the crime. Therefore, we conclude any error in failing to give a unanimity instruction was harmless.

## DISPOSITION

The judgment is affirmed.

McCONNELL, P. J.

WE CONCUR:

DO, J.

BUCHANAN, J.

13